THE MARION TOWNSHIP UNION DRAINING COMPANY ET AL.
*v.* NORRIS ET AL.

DRAINING ASSOCIATION.—*Liability of Members.*— *Judgment.*—Where the members of a draining corporation were sued, with the corporation, for a liability incurred by the company, and the individual members composing the corporation demurred to the complaint, and the demurrer was overruled, and judgment was rendered against the defendants, to be first collected of the assets of the corporation;

*Held,* that the members of the corporation could not complain of the ruling, as they were not injured thereby, even if their liability was only contingent and secondary.

SAME.—*Answer.*—*Execution.*—Where the complaint alleged that the corporation had no assets subject to execution, an answer that it had a schedule of assessment of benefits upon land and real estate affected by the construction of its work, duly recorded, etc., exceeding the amount of its liability, was no defence, as such assessments are not subject to an ordinary execution.

APPEAL from the Boone Common Pleas.

BUSKIRK, J.—This was an action in the Boone Court of Common Pleas, wherein the appellees were plaintiffs, and the appellants were defendants, for the breach of a contract between the appellees and the Marion Township Union Draining Company, a body corporate, organized and existing under the act of June 12th, 1852, 1 G & H. 303, for the construction and excavation of a drain, for which the company agreed to pay the appellees, as the work proceeded, at the rate of eighteen cents per cubic yard of excavation, and two dollars per day for cleaning the line of the drain. The appellees sought to recover for work done in part performance of this contract, as well as for damages resulting from an abandonment of the contract by the company, and a refusal by the company to pay for the work as it proceeded, whereby the plaintiffs were compelled to abandon the work.

Peter S. Moore and the other appellants, except the draining company, were made parties defendants, as members of the company at the time of the execution of the contract, and afterward while the work was being done. The complaint avers that the company has no property subject to execution.

The defendants answer by a general denial, and, by way of set-off, that plaintiffs are indebted to defendants for money had and received, for goods furnished, and for checks and other evidences of the company's debt, delivered at plaintiffs' request; and, by way of counter claim, that defendants are damaged by the plaintiffs' unskilful performance of the work upon the drain.

Moore and the other members of the company, in the sixth paragraph of their answer, say that the draining company "is a lawful corporation, and had, and still has, a large amount of property subject to execution, to wit, the schedule of assessments of benefits upon land and real estate affected by the construction of this drain, to wit, five thousand dollars."

To these answers, except the sixth paragraph, the plaintiffs reply by a general denial.

The defendants, except the draining company, demurred to the complaint, which demurrer the court overruled.

The plaintiffs demurred to the sixth paragraph of the answer of Moore and others, which demurrer the court sustained.

The cause was tried by a jury and resulted in a general verdict in favor of the plaintiffs, and against all of the defendants, for the sum of nine hundred and seventy-nine dollars and seventy-nine cents. The jury also returned answers to special interrogatories. The defendants moved the court for a new trial, and assigned, among other reasons, that the damages assessed were excessive. The plaintiffs remitted the sum of one hundred and fifty-four dollars and seventy-nine cents. The court overruled the motion for a new trial, and rendered judgment for the sum of eight hundred and twenty-five dollars. The judgment provides, that the property of the company shall be exhausted before the property of the individual members of said company shall be seized and sold upon execution.

The defendants excepted to the overruling of their motion for a new trial.

The appellants have assigned three errors.  1. In over-ruling the demurrer to the complaint.  2. In sustaining the demurrer to the sixth paragraph of the individual answer of the defendants.  3. In overruling the motion for a new trial.

The third assignment of error cannot be considered by us. The court rendered judgment on the verdict of the jury, on the 16th day of January, 1870.  On that day, the defendants prayed an appeal to this court, which was granted, and sixty days therefrom were allowed the defendants, in which to file a bond and bill of exceptions.  The bond was filed on the 5th day of February, 1870.  It appears from the record that the bill of exceptions was filed on the 8th day of April, 1870, which was beyond the time limited by the court.  The bill of exceptions not having been filed within the time limited, constitutes no part of the record.  It does not appear when the bill of exceptions was signed by the judge.  The presumption will be that it was signed on the day it was filed in the clerk's office.  It does not come within the rule laid down by this court in the case of *Albaugh* v. *James*, 29 Ind. 398, for two reasons; first, in that case the entry was, "And the defendants are given sixty days to prepare their several bills of exceptions;" while in this case the entry is, "And sixty days from this date are allowed said defendants to file such bond, and file their bill of exceptions herein;" second, in that case it appeared of record that the bill of exceptions was signed by the judge within the time limited, but was not filed in the clerk's office until after the sixty days; while in this case, it does not appear when the bill was signed; but it affirmatively appears that it was not filed within the sixty days limited by the court for the filing.  All that we decide is, that the case under consideration does not come within the rule laid down in *Albaugh* v. *James*, *supra*, but we do not want to be understood as approving of that decision, for we entertain grave doubts as to its correctness.

See the numerous decisions collected and referred to on pages 46 and 47 of 2 Davis' Ind. Digest.

Did the court err in overruling the demurrer to the complaint?

The action was brought against The Marion Township Union Draining Company, and against the individuals who composed such company. The company did not join in the demurrer. The demurrer was filed by and on behalf of the persons who composed such company, and presents for our decision the question of whether the members of such company were primarily or secondarily liable for the debts contracted by such company.

The solution of this question renders it necessary for us to examine the law by which the company was organized, and ascertain the purpose and powers of the company and the extent of the individual liability of the members of such company.

The Marion Township Union Draining Company was a corporation, organized under the act of June 12th, 1852, and the amendment of March 4th, 1859.

These acts confer upon corporations organized under their provisions power to construct levees, drains, or breakwaters, or to do any other work necessary to protect or reclaim wet lands, or lands subject to overflow, whenever any number of persons, not less than five, who may be interested in the construction of any particular levee, drain, or other work, shall associate themselves together in the manner specified in the acts.

The corporations of this kind have no other objects than these, in their inception or in their continuation. When these objects have been attained, the corporation has fulfilled its mission and has no other office to perform. Its work is done, and it may dissolve or expire through inaction. It has no motive to continue its legal existence.

The act of 1852 gives no power to the corporation to hold land or other property. It may indeed hold such property as may be necessary for the construction of the work for which it came into being; but generally the corporation does not find it convenient or practicable to do the work itself,

through its agents, and to furnish the necessary implements and materials.

It more frequently lets the work out to be done by a contract or at a stipulated price. Thus it may frequently happen that the corporation at no moment in its existence will be the owner of a penny-worth of property that can be levied upon under a writ of execution. Not only is it improbable that the corporation will have property which may be levied upon, but, unless it have property for the purpose of constructing the work it is organized to do, it is not possible for it to hold property according to law.

The doctrine seems now to be well settled, that corporations have no powers except such as are specially granted by the act of incorporation and such as are necessary for the purpose of carrying into effect the powers expressly granted. 2 Kent Com. 299, and cases cited. They can do no acts, and enter into no contracts, except such as may be appropriate as means to the end for which the corporation was created. Bouv. Law Dic., tit. Corporation, 2.

As corporations are the mere creatures of law, established for special purposes, and derive all their powers from the acts creating them, it is perfectly just and proper that they should be obliged strictly to show their authority for the business they assume, and be confined in their operations to the mode and manner and subject-matter prescribed.

The statute of 1852, then, gave to draining companies organized under the same no authority to hold property subject to execution, except impliedly such as should be necessary for the work they were created to do. It was frequently, perhaps generally, unnecessary to hold property even for this purpose. These corporations were thus entirely irresponsible. Their creditors were without the means of enforcing by law satisfaction of their claims.

It was to cure this defect that the statute of 1859 was passed; thereby it became the law, that "all the members of such companies shall be individually liable for all debts contracted by, and damages assessed against any company

of which he may at any time be a member." 1 G. & H. 305, sec. 4.

The language of this act would seem to impose upon the members of such companies an absolute liability to pay, without any condition whatsoever, all debts contracted by the corporation during their membership. There is no provision in it that the members shall be individually liable in the event of the insolvency of the corporation, or in case the corporation have no property subject to execution. We cannot believe, in view of the mischief sought to be remedied, that the legislature intended to impose a conditional liability.

The act of 1859 is a remedial statute. Such statutes should be construed largely and beneficially, so as to advance the remedy. *Tousey* v. *Bell*, 23 Ind. 423; *Jackson* v. *Warren*, 32 Ill. 331; *Smith* v. *Moffat*, 1 Barb. 65.

In order to discover the true meaning of a statute in a doubtful case, the cause of making it is to be regarded. *Somerset* v. *Dighton*, 12 Mass. 385.

Statutes are to receive such construction as must evidently have been intended by the legislature, and to ascertain this, the court may look at the object in view, the remedy intended to be afforded, and the mischief to be remedied. *Winslow* v. *Kimball*, 25 Maine, 493.

Remedial statutes may be construed *ultra*, but not *contra*, the strict letter. *Converse* v. *Burrows*, 2 Minn. 229; *Crocker* v. *Crane*, 21 Wend. 211.

This court in *Todhunter* v. *Randall*, 29 Ind. 275, which was an action against the individual members of a draining company, where a judgment had been obtained against the company and an execution had been returned no property, say: "The objection urged to the paragraph is that it does not sufficiently show that the assets of the company had been exhausted before the commencement of this suit. It is argued by the appellants' counsel that the obligation imposed by the statute on the members of the company is but a collateral one and only attaches when the company be-

comes insolvent, by all the means in its power to control being exhausted, and that so long as the company has the power to levy assessments on those benefited by the improvement, the members of the corporation are exempt from personal liability.

"We are not prepared to sustain this view of the case. The fourth section of the supplemental act of 1859, 1 G. & H. 305, declares that, 'all the members of such companies shall be individually liable for all debts contracted by, and damages assessed against any company, of which he may at the time be a member.' There is nothing in this section annexing any condition to such liability, except that the debt shall be contracted by the company, or the damages assessed against it, when the person sought to be made responsible is a member thereof. It is by no means clear, that the section does not create an original obligation and render the members of the corporation liable in the first instance. But we do not decide that question, as we are very clear in the opinion that if the obligation imposed by the statute be regarded only as a collateral one, still it is sufficient for the creditor to show that he has been unable by the ordinary process of law to compel payment. That fact is fully shown by the allegations of the second paragraph of the complaint, and the demurrer to it was correctly overruled."

The act of 1859 was a remedial statute, and the legislature having failed to annex any condition to the liability of the members, we are of the opinion we cannot and ought not to annex any. But suppose that the liability of the members is contingent and collateral, and not absolute and unconditional, can the appellants complain of the ruling of the court? Have they been injured by such ruling? We think they have not been injured. It is alleged in the complaint that the company own no property subject to execution; and it is provided in the judgment, "that upon execution of this judgment, the property of the defendant, the Marion Township Union Draining Company, be first ex-

hausted before proceeding against the property of the defendants, Peter S. Moore and others, members of said company."

By the judgment of the court, the liability of the members of such company is made contingent and secondary. Their property cannot be seized and sold upon execution until all the property of the company has been exhausted. Practically this amounts to the same thing as suing the company alone and obtaining judgment and exhausting the property of the company, and then suing the members upon their individual liability. We are of the opinion that the court committed no error in overruling the demurrer to the complaint.

. It remains for us to inquire and determine whether the court erred in sustaining the demurrer to the sixth paragraph of the answer of Peter S. Moore and others, members of said company.

It was alleged in the complaint that the company had no property subject to execution. In answer to this, it is alleged in the sixth paragraph of the answer, that the draining company is a lawful corporation, and had, and still has, a large amount of property subject to execution, to wit, the schedule of assessments of benefits upon land and real estate affected by the construction of this drain, to wit, five thousand dollars.

If the liability of the members of the company is absolute and unconditional, then the answer was clearly and palpably bad; but regarding their liability as collateral, did the matters alleged in the said answer constitute a bar to the action against the members of said company? We think they did not.

The only property which the members allege the corporation owns is "the schedule of assessment of benefits upon land and real estate affected by the construction of its said work, duly recorded, etc., to wit, the sum of five thousand dollars." But choses in action are subject to execution only when made so by statute, or are voluntarily given up to be sold on execution. *M'Clelland v. Hubbard,* 2 Blackf. 361;

*Johnson* v. *Crawford*, 6 Blackf. 377. By reference to 2 G. & H. 239, sec. 435, *et seq.*, it will appear that the property set out in the answer is not subject to execution.

While the assessments of benefits in case of the insolvency of the company and its members might be reached by the creditors of the company, they would not be liable to sale upon an ordinary execution.

If the allegation contained in the answer is true, that the company had a large amount of property subject to execution, then, under the judgment rendered, it will have to be first exhausted, and if it is not true, then the liability of the members of such company attaches, if their liability is collateral. We are of the opinion that the court committed no error in sustaining the demurrer to the sixth paragraph of the answer.

The judgment is affirmed, with costs.

*A. J. Boone* and *R. W. Harrison*, for appellants.

*A. F. Denny* and *W. C. Lamb*, for appellees.