# APPELLATE COURT

OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, NOVEMBER TERM, 1893, IN THE SEVENTY-EIGHTH YEAR OF THE STATE.

———————◆———————

No. 838.

### EWING ET AL. *v.* STULTZ ET AL.

CORPORATION.—*Personal Liability of Stockholders.—When Enforceable.*
—Under section 5077, R. S. 1894, fixing the liability of stockholders of a corporation, there is, in laborers, no right to enforce the personal liability of stockholders, until some necessity therefor arises, such as the insolvency of the company or their failure to collect by legal process.

SAME.—*Payment of Laborers' Claims by Part of Shareholders.—Can not Enforce Contribution.— Voluntary Payment.*—Where certain stockholders of a corporation voluntarily pay the wages of laborers of the corporation, such payments must be deemed voluntary, in the absence of any showing that there was, at the time of such payments, any necessity for resorting to them for such payments; and such shareholders can not enforce contribution therefor from the remaining shareholders.

From the Huntington Circuit Court.

*J. B. Kenner* and *J. Q. Cline,* for appellants.

*M. L. Spencer* and *J. C. Branyan,* for appellees.

GAVIN, J.—Appellees filed their complaint against appellants and other defendants, alleging that the plain-

tiffs and defendants were the members and holders of all
the shares of the capital stock of the Huntington Cream-
ery Co., a corporation duly organized under the laws of
Indiana, for the manufacture and sale of butter; that all
the capital stock was paid up and invested in a plant,
leaving no funds on hand to carry on the business, which
commenced November 1, 1885, and was continued until
it ceased operations, July 1, 1888, during which time a
large amount of indebtedness, for current wages, to the
amount of $5,000, was incurred to laborers, which ap-
pellees paid from time to time, the directors having been
unable to borrow money to run the business, as author-
ized by the stockholders, upon the company's paper.

It is further alleged that the company "is wholly in-
solvent," and that, on November 1, 1889, appellees de-
manded of appellants that they should contribute about
ninety per cent. of the face value of their stock, which
was their proportionate share of the wages so paid by
appellees.

The bill of particulars shows payments to numerous
laborers, regularly made at various periods, from Decem-
ber 26, 1885, to August 8, 1888.

It nowhere appears that the corporation itself did not
have, during all this time, abundant assets from which
these labor claims could have been collected. No facts,
other than that the company had no ready money, are
disclosed, showing any necessity for resorting to the in-
dividual stockholders at the time these payments were
made.

It is true it appears that the corporation was insolvent
at the time of the commencement of the suit, but this
was long after the last payment made by appellees.
There is no allegation of insolvency at the time the pay-
ments were made. We must assume, then, that the
corporation had ample property from which these labor

debts could have been collected when paid by appellees.

This statement of the facts found in the complaint is sufficiently full for the consideration of the questions. We come now to the consideration of the questions presented by the demurrer to the complaint.

The averments, that the plaintiffs and defendants were members of the company and the holders of all the shares of stock, are allegations of fact, and are sufficient to show that the appellants were stockholders. The mode by which they became stockholders is a matter of evidence. *Overmyer* v. *Cannon*, 82 Ind. 457; *McFarland* v. *St. Paul, etc., Ins. Co.* (Minn.), 49 N. W. Rep. 253; *Butler University* v. *Scoonover*, 114 Ind. 381; *Railroad Co.* v. *Smith*, 48 O. St. 219, 31 N. E. Rep. 743.

The articles of association filed with the complaint as an exhibit can not be considered as a part of it, because the complaint is not founded upon them.

The rule is well settled that a stockholder who has been compelled to pay more than his proportion of the debts of a corporation, may maintain an action against his co-stockholders for contribution. This rule is founded upon the plainest principles of equity and right. Cook on Stock and Stockholders, etc., section 211; Morawetz on Private Corp., section 894; Beach on Private Corp., section 141; Thompson Liability of Stockholders, section 376.

The question then arises whether or not the complaint shows that appellees were compelled to pay these labor debts so as to give them the benefit of this rule of law.

Section 5077, R. S. 1894, provides: "The stockholders and members of manufacturing and mining corporations shall only be liable for the amount of the stock subscribed by them respectively. * * * *Provided*, That such stockholders shall be individually liable for

all debts due and owing laborers, servants, apprentices and employes for services rendered such corporation.''

As to the character of the liability thus imposed upon the stockholders, whether it is immediate and primary or secondary and to a certain extent contingent, the adjudicated cases are not entirely in accord, either in our own State or in others. The purpose of the provision is plain. It is to make safe and secure the wages of the workmen and employes of the corporation. The provision is not penal in its nature, but remedial, and should receive such a construction as is reasonably calculated to accomplish the purpose in view.

If the argument by which appellees would sustain their position is tenable, then any employe working for a corporation may, whenever his wages are due, at once sue the stockholders, without even making demand upon the corporation for payment, because the stockholders are primarily and immediately liable. Such a result would appear to be an unnecessarily harsh one, and yet, if it is the law, it must be enforced.

It is urged with much vigor, that the statute says the stockholders shall be individually liable for these debts, and that because the statute puts no express limitation upon the liability, none exists. It is true the statute does not say they shall be liable upon any contingency, nor secondarily only, yet it does not say they shall be primarily liable, nor as principals. Should we hold that liability to be secondary, it is none the less a liability.

This provision is embodied in the law for the benefit of the laborer, to enable him to be safe as to his wages. It was not intended as a means to increase the available capital stock of the company, and thus enable it to continue in business when it would otherwise cease to operate. Morawetz on Private Corp., section 869.

Ewing *et al. v.* Stultz *et al.*

An examination of the authorities will disclose abundant justification for these statements.

In the case of *Toner* v. *Fulkerson*, 125 Ind. 224, the Supreme Court, by MITCHELL, Judge, lays down the law clearly and succinctly: "The distinguishing feature of corporate existence is, that the very fact of incorporation exempts the stockholders from all individual liability after they have paid the amount of their subscriptions for stock. After the full par value of the stock subscribed for has been paid, the common law liability of the stockholder, both as respects the corporation and its creditors, is at an end. Any additional liability must be imposed by statute or must result from the failure of the supposed corporation to become duly incorporated, whereby the members constitute a co-partnership and become liable as partners. Persons who deal with a corporation must look to the company primarily for the debts due them. When the corporation becomes insolvent and fails to pay, they may then resort to any unpaid subscriptions to the capital stock which constitute a trust fund for the benefit of creditors, or they may enforce any statutory liability which the law imposes."

If this be the law then this liability of the stockholders is not primary but secondary, to be resorted to by the creditor when the necessity therefor arises.

In Beach on Private Corp., section 123, the law is thus laid down: "The personal liability of stockholders for the debts of the company is secondary to that of the company itself, and does not accrue until the corporate assets have been exhausted or clearly shown to be insufficient to meet the demands of creditors. This is the rule, both in respect of their liability upon the unpaid balance of their subscriptions, and as to any individual liability which may be imposed upon them by charter or statute."

See, also, section 124 for numerous instances wherein

the necessity for resorting to the stockholder is sufficiently made to appear.

Section 883, 2 Morawetz on Private Corp., is as follows: "The special individual liability of the members of a corporation is not intended to be the primary source for the payment of the corporate debt. The fund subscribed by the shareholders at the formation of their company is expected to be the company's sole working capital, and the means of satisfying its creditors; any additional individual liability assumed by the corporators is intended merely as a secondary security for creditors, in case the capital is supplied for carrying on the company's business should be lost in speculation. For this reason, it is a condition in nearly all provisions imposing individual liability upon the shareholders of incorporated companies, that creditors must first exhaust their remedies against the corporation and its assets, by obtaining judgment and issuing execution, before they can proceed against the shareholders individually. As a rule, this is expressly provided for by the statute or charter under which the liability is created; but even where there is no express provision to that effect, it may fairly be implied from the character of the liability and the intention of the parties."

In Cook on Stock and Stockholders, etc., section 219, we find the law to be thus·declared: "Even when not expressly provided by statute, it is the rule, according to the weight of authority, that corporate creditors, before they can proceed against the shareholders upon their statutory liability, must first exhaust their remedy against the corporation and its assets. This rule arises from the fact that the liability of the stockholders is not the usual fund for the payment of corporate debts, but that the corporate treasury is the primary resource. Accordingly, the statutory liability of the stockholders is not to be resorted

to, if the assets of the corporation, including the unpaid subscriptions for stock, will suffice to pay the debts.''

In *Patterson & Co.* v. *Wyomissing Mfg. Co.*, 40 Pa. St. 117, in construing a statute imposing an individual liability upon stockholders with no limitation expressed, it is said by the court: ''What is the character of their liability? We think it is secondary, not primary; collateral, not principal; analogous to a case of guarantee, to be enforced if the regular process in the principal contract proves fruitless, or if the corporation 'becomes insolvent.''

Our conclusion, then, is that under this statute there is in the laborers no right to enforce the personal liability of the stockholders until some necessity therefor arises, such as the insolvency of the company or their failure to collect by legal process, and in this conclusion we are supported by the following additional authorities: *Ladd* v. *Cartwright*, 7 Ore. 329; *Harper* v. *Union Mfg. Co.*, 100 Ill. 225; *Jackson* v. *Meek*, 87 Tenn. 69; *Nimick & Co.* v. *Mingo Iron Works Co.*, 25 W. Va. 184; *Barwick* v. *Gifford*, 47 O. St. 180; *Terry* v. *Tubman*, 92 U. S. 156; *Toucey* v. *Bowen*, 1 Bis. 81.

It has been held in Indiana, that under section 26, p. 427, 1 R. S. 1876, and section 4, p. 305, 1 G. & H., which impose upon the stockholders of drainage associations a personal liability, this liability is direct and primary and enforceable without resorting to the corporation. *Marion, etc., Drainage Co.* v. *Norris*, 37 Ind. 424; *Shafer* v. *Moriarty*, 46 Ind. 9; *Trippe* v. *Huncheon*, 82 Ind. 307.

These latter two cases are based upon and follow the first named case, and it is founded upon the fact that drainage associations are creatures of the law, organized with no capital stock and no other means than derived from its power to assess and collect benefits, and being

of such a character, they are not expected to have prop-
erty from which debts could be collected. With ordi-
nary business corporations, such as this with which we
are dealing, this argument wholly fails.

There are quite a number of cases, outside of Indiana,
holding that individual liability imposed upon stock-
holders, with no condition expressed, is absolute, direct
and primary, and accrues against them at the same time
as against the corporation. Such a holding seems to us
manifestly inequitable, as applied to our statute at least,
and we feel fully justified in following the later expres-
sion of the law, as declared by our own Supreme Court,
in *Toner* v. *Fulkerson, supra.*

In construing section 4920, R. S. 1881, which pro-
vides absolutely that conveyances to defraud creditors
shall, as to them, be void, the court holds that before it
will so declare such a conveyance, there must be shown
a necessity for resorting to the land for the protection of
the creditor.

In the absence of any showing that there was, at the
time of these payments by appellees, any necessity for
resorting to them for such payments, their payments
must be deemed voluntary. When they made the pay-
ments, the claims were not then enforceable against
them. The proper and primary fund for their payments
was the corporate property. Until this was exhausted,
or the corporation shown to be insolvent, the laborers
were not entitled to enforce their claims against appellees.
Appellees, however, voluntarily paid the claims, and
thus protected the primary fund from being applied to
their payment, and held the claims until the corporate
property had been dissipated, and then asked for contri-
bution. To this they were not entitled. To so hold
would enable the managers of any manufacturing corpo-
ration to impose risks and liabilities upon the stock-

holders, which were not contemplated by the statute. By saying that the managers of a corporation could, year after year, advance money to laborers and continue the business at the final expense of the other stockholders, would impose upon them burdens which we can not believe to be within the spirit of this statute.

Such a construction of the statute is entirely unnecessary for the protection of the employes.

In addition to the personal liability of the stockholders, to be resorted to when occasion shall require, our statutes give to labor claims a preference over all others whenever the assets of the corporation pass into the hands of a receiver or assignee. Elliott's Supp., sections 1598–1605.

There is here no element of estoppel against appellants, because there is not alleged any knowledge upon their part of these payments by appellees, nor any consent or direction thereto by them. It does not appear that these particular stockholders had any knowledge that the business was being conducted at a loss, nor that they individually participated in any direction to continue the same.

The judgment is therefore reversed, with instructions to sustain the demurrer to the complaint, with leave to amend, if desired.

Lotz, J., dissents.

Filed Jan. 11, 1894.

## DISSENTING OPINION.

Lotz, J.—It is averred in the complaint, that the "plaintiffs and defendants entered into a certain agreement to organize a corporation. *   *   * Afterwards the plaintiffs organized such corporation, *   *   * and certificates of stock *   *   * were issued to the plaintiffs and defendants, severally, which were accepted by

the plaintiffs and defendants, and paid for, according to said agreement."

From these averments, I think it appears that the plaintiffs and defendants were promoters, incorporators, and stockholders of the corporation, and that the relation of stockholders existed between them from the time of the organization of the corporation to the commencement of this action.

It is the policy of the Legislature of this State to secure to the laborer the speedy and certain payment of his wages. This policy, however, as held in the majority opinion, does not give him the right to proceed directly against a stockholder without a showing that a suit against the corporation would be unavailing. He must first exhaust the corporation. A corporation of the kind described in the complaint can not proceed with its business without the assistance of laborers. If the wages are not paid, the laborers may refuse to work, and the business of the corporation come to an end.

It is averred that "no funds were provided for the payment of employes and laborers."

A stockholder who pays the wages of the laborers, under such circumstances, does so in the interest of the corporation, and for the purpose of promoting its business. The property of the corporation is represented by the stock, and payments of this kind enure to the benefit of the stockholders. When the appellees made the payment of the labor claims, they did it for the protection of their own property and that of their fellow-stockholders, the appellants. They were subrogated to the rights of the laborers. Their remedy, it is true, was primarily against the corporation. But the complaint shows that the corporation is insolvent, and from this it follows that a suit against it would be unavailing.

Upon the theory that the relation of stockholders ex-

isted between the appellants and appellees, from the organization of the corporation to the time of the commencement of this action, I think the complaint states a good cause of action.

Filed Jan. 11, 1894.