Filed October 9, 1895.

No. 17,414.

United States Saving Fund and Investment Co. *v.* Harris et al.

PLEADING.—*Answer, When Demurrable,—Infancy.—Note.--Mortgage.* —An answer, setting up defendant's infancy as a full defense, both to a note and mortgage, is demurrable, where it is a defense only to the note.

SAME.—*Complaint, When Not Demurrable.—Relief.*—A pleading, in the nature of a complaint, is not demurrable, where it states facts showing that plaintiff is entitled to any of the relief demanded.

REAL ESTATE.—*Conveyance.—Disaffirmance of Mortgage by Infant Feme Covert.—Restoring Consideration.—Statute Construed.*—The term "conveyance of real estate," as used in sections 3364 and 3365, R. S. 1894, relating to conveyances of land by infant *feme coverts*, comprehends mortgages of real estate as well as deeds of conveyance; and before such *feme covert* can disaffirm her mortgage she must restore the consideration received, although she may disaffirm the note secured by the mortgage, thus avoiding personal liability.

From the Hendricks Circuit Court.

*Cofer & Hadley, N. M. Taylor* and *Hogate & Clark*, for appellant.

*C. Foley*, for appellees.

McCABE, J.—The appellant sued the appellees to foreclose a mortgage executed by them on real estate.

The circuit court overruled a demurrer to the separate answer of appellee Lotta B. Harris, sustained the demurrer of said appellee to appellant's reply to her separate answer, and sustained the demurrer to the answer of appellant to the separate counterclaim of said appel-

lee.   The issues formed were tried by the court, resulting in a finding and judgment in favor of said appellee Lotta B., and a finding and judgment against the appellee John W. Harris, foreclosing the mortgage as to him.

The errors assigned by appellant call in question the rulings upon demurrer above mentioned.

The appellee John W. Harris assigns for cross-error, that the circuit court sustained appellant's demurrer to the separate partial answer of said appellee John W.

And appellee, Lotta B. Harris, assigns for cross-error, that the circuit court overruled her objection and exception to the rendition of judgment of foreclosure against her co-appellee.

The substance of the separate answer of appellee Lotta B. Harris, by her guardian *ad litem*, is that she was born on January 13, 1876, and hence was an infant when the note, bond and mortgage sued on were executed, to-wit: January 20, 1893; she being at that time but seventeen years of age; that she was married to her co-defendant, John W., on February 1, 1892, and has ever since been his wife; that on October 19, 1892, her father and mother made a gift to her and her said husband of the real estate described in the mortgage, and conveyed the same to them by a general warranty deed, designating and describing them therein as husband and wife, the granting part of which reads thus : "Convey and warrant to John W. Harris and Lotta B. Harris, his wife," then follows the description of the real estate conveyed, the same being a lot in the town of Danville, Hendricks county, Indiana; that said deed was duly recorded in the recorder's office in said county on October 29, 1892, which was more than three months before the note and mortgage sued on were executed.   That the only right, title, or interest which she

and her said husband, or either of them, had in or to said real estate at the time said mortgage was executed, or ever had therein, is by virtue of said deed of conveyance; that at and before the time of the execution of the mortgage sued on, and before the plaintiff loaned the money sought to be secured by said mortgage, or parted with any value on account thereof, appellant's executive officers knew that this defendant was under the age of twenty-one years, and would not arrive at that age until long after the execution of the mortgage and the making of the loan; that she did not, either before, or at the time of, the execution of said mortgage or the making of said loan, state or represent in writing to the plaintiff that she was twenty-one years of age.

The substance of appellant's reply to the foregoing answer is that the amount specified in the bond and mortgage sued on, was money borrowed by the defendant Lotta and her co-defendant John W. Harris, for the purpose of paying for labor and material for a dwelling house, out houses and other buildings constructed on the real estate owned by them as aforesaid and described in the complaint, and that the same was actually used for that purpose and for no other; that said John W. Harris was, at the time said money was loaned and when the bond and mortgage sued on were executed, a person of the full age of twenty-one years; that the defendants, nor either of them before or after this suit was brought, paid or offered to pay said sum of money so loaned by the plaintiff to the defendants, or any part thereof, nor have they brought said money into court or any part thereof for the use and benefit of the plaintiff, nor have they restored or offered to restore to the plaintiff the consideration received from it for the bond and mortgage sued on.

The separate counterclaim of appellee Lotta B. Har-

ris only differs from her separate answer in that it sets out by exhibits the note or bond and mortgage sued on, and asks for affirmative relief, that it be adjudged that said note or bond and mortgage sued on are null and void and of no effect, and said real estate be forever released therefrom.

The appellant's answer to the separate counterclaim of said appellee Lotta B., is substantially the same as its reply to her separate answer, the substance of which reply is already set forth above. So that it appears the same question is substantially presented by the ruling on the several demurrers to the several pleadings above outlined; and that question is, can an infant *feme covert* disaffirm her mortgage in which her husband, over twenty-one years of age joined, without restoring the consideration she has received therefor? The ruling on the demurrer to appellant's answer to the separate counterclaim of Lotta B. Harris, raises the further question whether an infant *feme covert* can disaffirm her note or bond.

It is contended by the appellant's counsel that appellee Lotta B. Harris, though an infant when she executed the mortgage in suit, cannot disaffirm it without restoring the consideration she received therefor. It is conceded on both sides that at common law all infants may disaffirm all contracts that are voidable merely into which they may have entered, unless it be implied contracts for necessaries, and that the contract here involved is not one for necessaries. But it is contended by the appellant that the Legislature has changed that feature of the common law by statutory enactment. The appellees contend that the legislative enactment relied on by appellant has no application to mortgages. The question, therefore, depends upon the proper construction of that statute.

The statute in question reads as follows: ''1. In all sales by an infant *feme covert* of lands belonging to her, and in which sale and conveyance her husband has joined, he being of full age, said infant shall not be permitted to disaffirm said sale until she shall first restore to the person owning said real estate the consideration she received for said land: *Provided, however,* That if she will allege in her complaint that she received no consideration for said sale, an issue may be made upon such allegation; and if, upon trial, the Court or jury find that any consideration was received by her, the Court shall, in the finding and decree, declare such amount so found first lien against said land in favor of the defendant.'' R. S. 1881, section 2944; R. S. 1894, section 3364.

''2. In all sales of real estate by an infant, he or she shall not be permitted to disaffirm said sale without first restoring to the person owning the property sold the consideration received in said sale, if said infant falsely represented himself or herself to said purchaser to be over the age of twenty-one years, and the party buying from said infant acted in good faith, and relied upon said representations in such sale, and had good cause to believe said infant of full age.'' R. S. 1894, section 3365; R. S. 1881, section 2945.

It is contended by the appellees that this statute cannot apply, because it has reference only to conveyances of land; and they contend further, that a mortgage in this State upon real estate constitutes only a lien upon the land mortgaged, vesting in the mortgagee no title therein, the title remaining in the mortgagor until divested by a judicial sale. That is true. *Reasoner, Admr.,* v. *Edmundson,* 5 Ind. 393; *Grable* v. *McCulloh,* 27 Ind. 472; *Lilly* v. *Dunn, Admr.,* 96 Ind. 220. But it does not necessarily follow that the Legislature

did not intend to include mortgages within the operation of the act.

As was said in *Stout* v. *Board, etc.*, 107 Ind. 343 (347): "It is true, as contended, that in construing a statute the probable intention of the Legislature must be kept constantly in view, and that where the language of the statute is plain and unambiguous, the expressed intention of the Legislature must prevail, there being no room left for construction. *Case* v. *Wildridge*, 4 Ind. 51; Buskirk Pr. 353; *Taylor* v. *Board, etc.*, 67 Ind. 383; *United States* v. *Fisher*, 2 Cranch, *358, 399; 1 Kent Comm. pp. 460–468. It is also true that the courts cannot extend the plain meaning of a statute by the substitution or addition of words or phrases without encroaching upon the legislative department of the government. *Trustees, etc.*, v. *Ellis*, 38 Ind. 3. But the legislative intention, as collected from an examination of the whole, as well as the separate parts of a statute, will prevail over the literal import of particular terms, and will control the strict letter where adherence to such strict letter would lead to injustice, to absurdity, or to contradictory provisions. *Mayor, etc.*, v. *Weems*, 5 Ind. 547; Buskirk Pr. 353; *Middleton* v. *Greeson*, 106 Ind. 18; *Miller* v. *State, ex rel.*, 106 Ind. 415. * * * So in cases of doubt or uncertainty, acts *in pari materia*, passed either before or after, and whether repealed or still in force, may be referred to in order to discern the intent of the Legislature in the use of particular terms, or in the enactment of particular provisions, and within the reason of the same rule, contemporaneous legislation, not precisely *in pari materia*, may be referred to for the same purpose. *Prather* v. *Jeffersonville, etc., R. R. Co.*, 52 Ind. 16–32; *Douglass* v. *Howland*, 24 Wend. 35–45; *Taylor* v. *Board, etc.*, *supra;* Bishop Written Laws, sections 75, 76. The history of a coun-

try, its topography, and the general condition are elements which enter into the construction of the laws made to govern it, and these are matters of which the courts will take judicial notice." To the same effect are *Storms* v. *Stevens*, 104 Ind. 46 ; *Woods* v. *State*, 134 Ind. 35 ; *Lime City, etc., Assn.* v. *Black*, 136 Ind. 544.

It is said in 1 Jones on Mortgages, that : "At common law the legal estate vested in the mortgagee and was forfeited upon default. Equity established the right of redemption after default. From these principles is derived the doctrine of mortgages as it exists at the present day, in England and in a large part of our own country. The legal title passes to the mortgagee by the deed, but the mortgagor has, after default, a right to redeem, which he may enforce in equity. A mortgage is one thing at law, and another in equity ; in the one court it is an estate, and in the other a security only.

The mortgagee has certain legal remedies, and the mortgagor certain equitable remedies. These have been so adjusted that a perfectly defined system is the result. Courts of law and courts of equity mutually recognize the jurisdiction of each other over this subject. Courts of law have so far adopted the principles of equity that they allow the legal title of the holder of the mortgage to be used only for the purpose of securing his equitable rights under it. Courts of equity allow the mortgagee, for the purpose of protecting and enforcing his lien against the mortgagor, the remedies of an owner ; he may enter into and hold possession, and take the rents and profits in payment of his mortgage debt, and may have his action of ejectment to recover such possession, and hence is sometimes called the owner. The mortgagee has something more than a mere lien ; he has the transfer of the property itself and a legal estate in it, giving him a standing at law, as well as in equity. His

interest can be called a lien only in a loose and general sense, in contradistinction to an absolute and indefeasible estate. In equity a mortgage of land is regarded as a mere security for a debt or obligation, which is considered as the principal thing, and the mortgage only as the accessory. The legal title vests in the mortgagee merely for the protection of his interest, and in order to give him the full benefit of the security; but for other purposes the mortgage is a mere security for the debt." 1 Jones on Mort., section 11, 4 ed. To the same effect is 15 Am. and Eng. Ency. of Law, 727. Lord Denman, in *Higginbotham* v. *Barton*, 11 Ad. and El. 307–314, said: "It is very dangerous to attempt to define the precise relation in which the mortgagee and mortgagor stand to each other, in any other terms than those very words;" and Baron Parke, in *Litchfield* v. *Ready*, 20 L. J. Ex. 51, speaking of the mortgagor, said: "He can be described only by saying, he is mortgagor." And in 1 Jones on Mort., section 16, it is said: "In the same way it may be said that the most accurate and comprehensive definition of a mortgage is that it is a mortgage."

The adoption of equitable principles by courts of law concerning mortgages has been followed by legislative enactments, taking from the mortgagee the right of possession in many of the American States, so that in these States it is the established doctrine that a mortgage confers no title or estate upon the mortgagee, but only a security. 1 Jones on Mort., section 12. As before observed, Indiana is one of the States adopting such legislative enactments. New York took the lead in that direction, and as early as 1828, enacted such a statute. And yet an examination of the cases in that State in which questions in regard to the nature of mortgages are involved and discussed, shows considerable conflict and contradiction of views. This is especially the case

with the decisions prior to the statute, taking from the mortgagee the right to recover possession of the mortgaged property; and even since that statute, although in theory the legal title remains in the mortgagor until foreclosure, it has been frequently admitted by judges and legal writers that for some purposes, and in some cases his interest must be treated and regarded as a title for the purpose of protecting his equitable rights. 1 Jones on Mort., section 13, and authorities cited. In *Hubbell* v. *Moulson*, 53 N. Y. 225, S. C. 13 Am. R. 519, the court of appeals said: "But while no title in a strict sense vests in the mortgagee of land until foreclosure, yet this interest is in some cases treated and regarded as a title for the purpose of protecting and enforcing the equities between the parties. An instance of this kind is found in *Mickles* v. *Townsend*, 18 N. Y. 575, where it was held for the purpose of applying the doctrine of estoppel by deed against a person claiming as assignee of a mortgage, which existed at the time of his prior conveyance of the mortgaged premises with warranty, but which was assigned to him afterwards. And in *Van Duyne* v. *Thayer*, 19 Wend. 162, the release of the equity of redemption by the mortgagor to the mortgagee was held to enure as an enlargement of the estate of the mortgagee, so as to prevent the plaintiffs from recovering dower at law, in disregard of the equity of the defendant to have the mortgage first satisfied out of the land."

The common law rule as to mortgages was modified by statute in this State at an early period. The present law modifying the common law character and qualities of a mortgage on real estate was enacted in 1852, and composed chapter 6, 1 R. S. 1852, page 239, and was carried forward into the revision of 1881, and composes,

with subsequent additions and amendments, article 39 of that revision, and also article 39 of Burns R. S. 1894.

The most important change made was, that unless the mortgage especially provide that the mortgagee shall have possession of the mortgaged premises he should not be entitled to the same; that no mortgage thereafter executed shall authorize the mortgagee to sell the mortgaged premises, but that every such sale should be made under a judicial proceeding.

The above mentioned act was approved May 4, 1852, and its title was: "An act concerning mortgages."

There was another act passed at the same session of the Legislature, entitled "An act concerning real property, and the alienation thereof." 1 R. S. 1852, page 232. This act composed chapter 23 of 1 R. S. 1852. This act was carried forward into the revision of 1881, and with certain additions and amendments thereto composes chapter 18 of said revision, under the title "Conveyance of land." R. S. 1881, page 580. (Section 3915 *et seq.*) And it composes chapter 20 of Burns R. S. 1894.

Section 12 of the act, being section 2927, R. S. 1881, and section 3346, Burns R. S. 1894, provides for the form of deeds for the conveyance of land, and section 15 of the act, being section 2930, R. S. 1881, and section 3349, Burns R. S. 1894, provides that: "Any mortgage of lands worded in substance as follows: 'A B mortgages and warrants to C D (here describe the premises), to secure the repayment of (here recite the sum for which the mortgage is granted or the notes or other evidences of debt, or a description thereof, sought to be secured, also the date of the repayment) the said mortgage being dated and duly signed, sealed, and acknowledged by the grantor, shall be deemed and held to be a good and sufficient mortgage to the grantee, his heirs, assigns, executors, and administrators, with warranty

from the grantor and his legal representatives of perfect title in the grantor and against all previous incumbrances. And if, in the above form, the words 'and warrant' be omitted, the mortgage shall be good, but without warranty." These two sections of the act have never been changed or modified in the slightest particular since their original enactment, and they still stand as the law governing and prescribing the requisites for deeds and mortgages of real estate.

A mortgage as thus prescribed must have been regarded by the Legislature as partaking of the nature of an alienation of real estate, or else the provision quoted was unconstitutional, being legislation upon a subject not expressed in the title of the act in violation of section 19 of article 4 of the State constitution. But the Legislature and this court, as well as every department of the State government, have at all times since its enactment regarded and recognized the provision quoted concerning real estate mortgages as valid and binding legislation under the above mentioned title. This could not be consistently done without recognizing the form of mortgages prescribed as a species of alienation or conveyance of an interest in real estate. The same Legislature that passed both acts already mentioned passed an act approved June 18, 1852, prescribing certain forms of pleading in civil cases, among which forms was No. 9, to foreclose a mortgage, reading as follows : "A B complains of C D, and says that the defendant executed a mortgage conveying to the plaintiff the tract of land therein described as security for the payment of a debt evidenced by a note," etc. Here again was an express recognition by the same Legislature that the statutory mortgage it had provided for still retained enough of the common law characteristics of the mortgage to make it necessary, in a complaint to

foreclose such mortgage, to allege that the mortgagor in executing it had conveyed to the mortgagee the tract of land therein described as security, etc. The warranty of title and against incumbrances provided for in our statutory mortgage is an express retention of one of the features of a common law mortgage, which is also one of the characteristics of a deed of conveyance making subsequently acquired title by the mortgagor enure to the benefit of the mortgagee, and conferring on the mortgagee the right to sue the mortgagor for breach of covenants of seizin against incumbrances and of warranty, as in an ordinary warranty deed of conveyance. Again, section 16 of the original act, "concerning real property and the alienation thereof," which is section 3350, Burns R. S. 1894, and section 2931, R. S. 1881, and which remains the same precisely as when first enacted in 1852, except the time for recording instruments is shortened from ninety to forty-five days, reads as follows: "Every conveyance or mortgage of lands, or of any interest therein, and every lease for more than three years, shall be recorded in the recorder's office of the county where such lands shall be situated; and *every conveyance or lease,* not so recorded in forty-five days from the execution thereof, shall be fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration." Here it will be observed that the first clause in the section provides that deeds, mortgages and leases for more than three years shall be recorded, but makes no provision as to the effect on such instruments to neglect to record them. But the last clause makes provision that every *conveyance* or *lease,* not so recorded shall be fraudulent and void as against any subsequent purchaser, etc. There is, therefore, no provision that a mortgage not recorded within the specified time shall be void as against

subsequent purchasers unless mortgages are included in the word conveyance in this clause. And yet this court has always held that mortgages were included within the term conveyance in the clause of the section mentioned by holding that they were void against subsequent purchasers if not recorded within the prescribed time. *Routh, Admr.*, v. *Spencer*, 38 Ind. 393; *Gilchrist* v. *Gough*, 63 Ind. 576, and authorities there cited.

If it were otherwise, all mortgages unrecorded within the specified time would be good against subsequent *bona fide* purchasers for value. Again, this court has always held that a mortgagee who has taken the mortgage to secure a pre-existing debt in consideration of an extension thereby made of the time of payment, is a purchaser for valuable consideration. *Gilchrist* v. *Gough, supra; Work* v. *Brayton*, 5 Ind. 396; *Babcock* v. *Jordan*, 24 Ind. 14; *Wright* v *Bundy*, 11 Ind. 398; *Busenbarke, Exr.*, v. *Ramey*, 53 Ind. 499.

This could only be so ruled because the mortgage is a species of conveyance. In the last case above cited, Worden, J., in speaking for the court said : "The proposition that the receiving of a conveyance by way of mortgage to secure the payment of a pre-existing debt," etc., and again : "We need not determine what would have been the effect of an absolute conveyance of the property by Ramey and wife to McCune in payment and extinguishment of the debt which Ramey owed Mount. The conveyance was made by way of security only for the old debt," thus recognizing that a mortgage was a species of conveyance. And in *Gilchrist* v. *Gough, supra*, Howk, J., in speaking for the court, said : "On the 1st day of March, 1869, the defendants * * * executed to the appellants the mortgage described * * conveying to him the real estate, etc., * * as security

for the payment of a debt," etc., again recognizing a
a mortgage as a species of conveyance.

When the statute we are considering was passed, we
had in force the 18th section of the act of descents, pro-
viding that if a widow shall marry a second, or other
subsequent time, holding real estate in virtue of any
previous marriage with a child or children alive by such
marriage, she was prohibited from alienating such real
estate during such second or subsequent marriage, with or
without the assent of her husband.   Burns R. S. 1894,
section 2641 ;  R. S. 1881, section 2484.   It will be ob-
served that the word alienate is used in the section in-
stead of convey.

The word alienate means to convey or transfer.  Bur-
rill Law Dic.   And yet  this court has frequently
decided that this inhibition upon alienation, this prohibi-
tion against conveying by such widow, of lands
descended to her from a former husband, made during a
subsequent marriage, also prohibits the making of a
mortgage thereon by her, during such subsequent mar-
riage.   *Vinnedge* v. *Shaffer*, 35 Ind. 341 ; *Bowers,
Admr.,* v. *Van Winkle*, 41 Ind. 432 ; *McCullough* v.
*Davis*, 108 Ind. 292 ; *Ætna Life Ins. Co.* v. *Buck*, 108
Ind. 174.

Here is an express recognition and judicial exposition
of the meaning of the word "conveyance," or alienation
by the highest judicial tribunal in the State, to the effect
that such word may and does include and embrace a
mortgage of real estate, or rather that a mortgage on
real estate is a species of conveyance, though it vests in
the mortgagee no title but a mere lien.   At least two
of these decisions were made before the enactment of the
statute we are considering.   The Legislature had a
right to, and it may be presumed they used the word
"conveyance" in the statute in the sense, and with the

meaning in which they had employed it in former statutes, and in the sense judicially attributed to it by the highest court in the State, prior to the time of its enactment.

It is very evident that the purpose of the act was to provide a remedy against the known evil arising out of the legal right of minors, who have actually reached the estate of manhood and womanhood, to disaffirm their contracts in relation to their real estate, and at the same time retain the consideration received.    It was not the purpose or intent to take away any of the protection that minority throws around infants of tender years. But it was the intent of the first section to take away some of the privileges the law of infancy throws around female minors, who are old enough to enter into and become bound by the most important civil contract that can be made by woman or man, and who have entered into such contract by marrying men over twenty-one years of age.

The second section was evidently intended to take away some of the legal privileges from minors, both male and female, who have so nearly reached the estate of manhood or womanhood, that they might honestly be taken for persons of full age by those dealing with them, and who in dealing with such, concerning their real estate falsely represent  themselves to be over twenty-one years of age.

The general object of both sections, evidently, was to prevent minors of both classes from using the shield of minority as a sword, to prevent them from perpetrating deeds of rascality and villainy by means of their minority.

The statute was, therefore, highly remedial.    Such statutes should be largely and beneficially construed, so as to advance the remedy.  *Tousey* v. *Bell*, 23 Ind. 423;

*Marion, etc., Co.* v. *Norris*, 37 Ind. 424. Such statutes may be construed *ultra*, but not *contra*, the strict letter. *Marion, etc., Co.* v. *Norris, supra.*

In the absence even of the previous history of the legislation and adjudications in this State, and other States, relative to the import of the term mortgage and the term conveyance, under the statutes referred to, it would seem strange if the Legislature, in enacting the statute under consideration, meant to confine the remedy strictly to deeds of conveyance in the strict sense. They could not look at or think of the frauds and wrongs that such minors had been perpetrating by disaffirming their deeds of conveyance without also thinking of and looking at the frauds and wrongs such minors had been perpetrating, and were liable to continue perpetrating by disaffirming their mortgages, as in this case, after being snugly ensconced in a comfortable dwelling house built on the land mortgaged by the money borrowed from the mortgagee's earnings and savings.

To suppose, in the light of all these considerations, that the Legislature did not intend to extend the remedy provided to mortgages, as well as deeds of conveyance, in the strict sense, is to attribute to it a thoughtless stupidity of a marvelous character; such a supposition would be a reproach to the Legislature and the law.

The principle involved has been directly decided in favor of the appellant on a similar statute by this court, in *Bakes* v. *Gilbert*, 93 Ind. 70. The statute there involved is the section next preceding the first section under consideration in R. S. 1881, and in Burns R. S. 1894, and is section 3363 of the latter and section 2943 of the former. This statute was approved April 13, 1866, and reads as follows: "Any married woman under the age of twenty-one years, whose husband is of the age of twenty-one years, may join with her hus-

band in any instrument for the conveyance of the real estate of such husband, under such regulations as are prescribed by law in such cases for married women of the age of twenty-one years; and such conveyance of such infant married woman shall in all respects be as valid as if she were of full age." In the case referred to the appellant, Bakes, sued the appellees, Samuel A. Gilbert and Alice Gilbert, his wife, to foreclose a mortgage on real estate owned by them, executed by them to secure the payment of a note executed by said Samuel.

Among the answers filed by Alice, separately, was her second paragraph, alleging her infancy at the time she executed the mortgage. The trial court overruled a demurrer thereto for want of sufficient facts. The judgment was reversed, with instructions to sustain the demurrer to the answer of infancy, thus holding that a mortgage executed by an infant *feme covert* was binding on her under a statute enabling her to bind herself with her husband, he being twenty-one years of age, "in any instrument for the conveyance of the real estate of such husband." This is a direct adjudication by this court that the term "conveyance of real estate" includes and comprehends mortgages of real estate.

It was said in that case that the plea of infancy would have been good if, in addition to the allegations of infancy, she had alleged that the real estate was her separate property, or that the husband was a minor when the mortgage was executed. That is because the statute only authorizes and enables her to bind herself by joining her husband in a conveyance of her *husband's* land when he is of *full age.* Therefore, both of those facts must exist to bring her within the statute. Therefore, she being an infant, the land being her own, or the land being his, and he under age, she cannot bind herself under the statute. But the presence of these alle-

gations could not make the answer of infancy good unless the term "conveyance," used in the statute, comprehends and embraces mortgages on real estate. But when this court reversed the judgment, remanding the cause, with instructions to sustain the demurrer to the answer of infancy, it was necessarily adjudged that a mortgage on real estate was embraced and comprehended within the term "conveyance," as used in that statute ; because the complaint to which the answer of infancy was addressed counted on a mortgage, and if a mortgage is not a species of conveyance, nor comprehended within that term, infancy was a good answer, whether the land belonged to him or her, and whether he was twenty-one years of age or not when it was executed.    Therefore, if the term conveyance, as used in the statute, did not comprehend and embrace mortgages on real estate, the trial court rightly held the plea of infancy good, and this court wrongly held it bad in remanding with instructions to sustain the demurrer thereto.    But by adjudging it bad, and instructing the trial court to sustain the demurrer thereto, it was, as before observed, adjudged that mortgages are embraced and comprehended in the term "conveyance," as used in the statute, and that mortgages of real estate are a species of conveyance.

That adjudication is decisive of the principle involved in this case in favor of the appellant and against the appellee, Lotta B. Harris, and requires a reversal of the judgment as to her unless that case is overruled.

That case cannot be overruled so as to escape its controlling influence on the case before us, because it was the rule of law declared by the highest court in the State, at the time the contract sued on in this case was executed. It must control the decision of that question in the case before us, right or wrong.    *Haskett* v. *Maxey*, 134 Ind.

182; *Stephenson* v. *Boody*, 139 Ind. 60, 38 N. E. 331. But the conclusion from the foregoing consideration is irresistible that that decision is right and ought to be adhered to.

It follows from what we have said that the circuit court erred in overruling the demurrer to the separate answer of the appellee Lotta B. Harris, and in sustaining the demurrer of said appellee to appellant's reply to her separate answer, and sustaining the demurrer to the answer of appellant to the separate counterclaim of appellee Lotta B. Harris. The conclusion reached makes the cross-error assigned wholly immaterial as such alleged errors cannot again arise.

The judgment is reversed and the cause remanded with instructions to sustain the demurrer to the separate answer of Lotta B. Harris, to overrule her demurrer to appellant's reply to her separate answer, overrule the demurrer to the answer of appellant to the separate counterclaim of said appellee, and for further proceedings not inconsistent with this opinion.

MONKS, J., did not participate in this decision.

Filed June 4, 1895.

### ON PETITION FOR REHEARING.

McCABE, J.—The appellees have filed a petition for a rehearing on the sole ground that we erred in unintentionally holding in effect that the appellee Lotta B. Harris could not disaffirm the note or bond secured by the mortgage. That is a separate contract from the mortgage. The mortgage contains an agreement to pay the debt separate and apart from the note or bond. We only intended to hold that she could not disaffirm the mortgage without restoring the consideration, and did not intend to hold that she could not disaffirm the note or bond secured thereby without such restoration. In case she

disaffirms the note or bond the remedy of the mortgagees must be confined to the real estate mortgaged. Burns R. S. 1894, sections 1100, 1110 ; (R. S. 1881, sections 1087, 1096.) Where there is a separate contract to pay the money secured by the mortgage, a personal judgment may be rendered against the mortgagor, to be levied of his general property in case the mortgaged land proves insufficient to pay the debt. Burns R. S. 1894, section 1111 ; R. S. 1881, section 1097. The statute in question only took away the right to disaffirm such mortgage without restoring the consideration. It left her right to disaffirm the contract, whether evidenced by the bond or note, or by a promise expressed in the mortgage, just as it was at common law, and by that law she had a right to disaffirm that contract, and thus avoid a personal judgment collectible outside of the mortgage. The answer of Lotta B. Harris, setting up her infancy as a full defense to both note and mortgage, was not good on demurrer, because it purported to be a full defense to both note and mortgage, whereas it was only a defense to a part of the cause of action, namely, the note or bond. Her counterclaim, or cross-complaint, counted on and set up the same facts as those stated in her answer, and asked a judgment or decree cancelling or declaring void both note and mortgage. This pleading was in the nature of a complaint, and must be tested by different principles from those governing an answer. The facts stated in the answer must be sufficient to bar the whole cause of action if it is pleaded in bar of the whole.

On the other hand, a complaint is sufficient to withstand a demurrer, if the facts stated therein show that the plaintiff is entitled to any of the relief demanded. The appellant's answer to this counterclaim was that the note and mortgage were given for borrowed money which

she had not restored, and that her husband was of full age at the time. This, as we before held, was a good answer to a part of the cross-complaint, but not to all. It was a good answer to that part of the counterclaim seeking a cancellation of the mortgage, but was not a good answer to that part seeking the cancellation of the note or bond.

Therefore, the mandate is modified to read as follows: The judgment is reversed, and the cause remanded with instructions to sustain the demurrer to the separate answer of Lotta B. Harris, to overrule her demurrer to appellant's reply to her separate answer, and to grant leave to amend the answer of the appellant to the separate counterclaim of said Lotta B. Harris, so as to make it a partial answer, or an answer to so much of her counterclaim as seeks to avoid and cancel only the mortgage. In case it be so amended, the demurrer thereto should be overruled for further proceedings not inconsistent with this opinion.

The petition for a rehearing is overruled.

Filed October 10, 1895.