Warren, Auditor, *et al. v.* Britton, Treasurer.

───────────────◆───────────────

No. 10,349.

Warren, Auditor, et al. *v.* Britton, Treasurer.

Constitutional Law.—*Construction of Statutes.—Benefit of Doubt.—Rule of Supreme Court.*—When the constitutionality of a statute, or of any of its provisions, is under consideration, it is and has been the rule of the Supreme Court to construe and interpret the same, if it can be done, in such manner as to sustain and not defeat the law; and it is not enough that

the constitutionality of the legislation may seem to be doubtful, for, in such case, the benefit of the doubt must be given in favor of the constitutionality of such legislation.

COUNTY TREASURER'S FEES.—*Taxation.*—*Title of Act.*—The fees of a county treasurer, the officer charged by law with the collection of taxes, are matters properly connected with the subject of the act entitled "An act concerning taxation," approved March 29th, 1881, within the meaning of section 19, of article 4, of the State Constitution.

SAME.—*Collection of Delinquent Taxes.*— *Repeal by Implication.*— *Inconsistent Statutes.*—The closing sentence or provision of section 6519, R. S. 1881, in relation to the fees of the county treasurer for collecting delinquent taxes, is a constitutional and valid provision, and, being the latest expression of the legislative will on that subject, it repeals by implication so much of section 5928, R. S. 1881, as is inconsistent and in conflict therewith, and no more.

From the Vanderburgh Circuit Court.

*D. P. Baldwin,* Attorney General, and *H. A. Mattison,* for appellants.

*A. Gilchrist, R. D. Richardson, A. C. Harris* and *W. H. Calkins,* for appellee.

HOWK, J.—This was an agreed case, under the provisions of section 553, R. S. 1881, wherein the appellee was plaintiff and the appellants were the defendants below. The agreed statement of facts, omitting merely formal matters, was, in substance, as follows:

"Said plaintiff is the duly elected, qualified and acting treasurer of Vanderburgh county, and has been such treasurer for more than one year last past; that the defendant William Warren is the duly elected, qualified and acting auditor of said county, and has been for more than one year last past; that the other defendants are the board of commissioners of said county; that, on the 15th day of December, 1881, the plaintiff, as such treasurer, received from the defendant, said auditor, the tax duplicate for the year 1881, of said county; that the whole amount of taxes upon said duplicate, which the plaintiff was thereby required to collect, was $318,604.44; that, of this amount, $102,544.69 were for delinquent taxes assessed against persons who had failed to pay the April in-

stalment for the year 1881, and due on taxes of the year 1880 and previous years, which said delinquent taxes were carried forward against the proper persons and their property, in separate columns provided for that purpose, on said duplicate; that from the time of the receipt of said duplicate by plaintiff, on said 15th day of December, 1881, to the third Monday of April, 1882, the plaintiff, as such treasurer, collected from the proper persons, of said taxes, in all the sum of $127,933.69, and, from the proper persons, of said delinquent taxes, the sum of $15,061.01, belonging to said county.

"The parties further agree that the plaintiff, as such treasurer, and the defendant Warren, as such auditor, did attend at the office of said auditor, on the third Monday of April, 1882, for the purpose of making a settlement under the provisions of the statute, in such cases made and provided, to wit, the 231st section of an act entitled 'An act concerning taxation,' approved March 29th, 1881; that, upon such settlement, the plaintiff claimed and insisted that he should be allowed six per centum of the amount of such delinquent taxes so collected, to wit, upon said sum of $15,061.01, as his fees; that the defendant, acting under the advice of the Auditor of State, refused to allow him, in said settlement, said six per centum upon said sum, or to allow him any other or greater percentage upon said amount of delinquent taxes so collected than upon taxes of the current year collected by the plaintiff, to wit, one per centum upon $100,000 of the taxes collected by him, and one-half of one per centum upon the remaining sum of $27,933.69, collected by him; and said auditor, in making the certificate required by said 231st section of said act, of the balance due from the plaintiff, as such treasurer, for State, county and local purposes, has made his certificate for such sums as allow the plaintiff for his fees, on such delinquent taxes, only one per centum on said sum of $100,000, and one-half of one per centum upon the remainder of $27,933.69, so collected by him; that the plaintiff then and there protested against said certificate being so made, and insisted and claimed that the

said auditor should first deduct six per centum on said sum of $15,061.01, and should certify only the remainder as being due from the plaintiff, for such State, county and local purposes.

" The parties further agree that the plaintiff has been compelled by force of said certificate, to pay over to the Treasurer of State, upon his settlement with said treasurer, a larger amount of money than he would have paid had he been allowed said sum of six per centum upon such delinquent collections, to wit, the sum of at least $163.35, in excess of the sum he would have paid, had he been allowed such six per centum; that, in the accounting of the plaintiff to the defendants, the board of commissioners of Vanderburgh county, the plaintiff will have, under such certificate, to account to said board for the sum of at least $665.50 in excess of the sum which he should account for, if he is allowed said six per centum on the amount of his collection of such delinquent taxes, and that, in all, the plaintiff will lose, by reason of such certificate being so made, the sum of $828.85, if he is right in his construction, that he should be allowed said six per centum.

" It is further agreed that the plaintiff has made application to the defendant, the board of commissioners of Vanderburgh county, to direct the defendant Warren, as such auditor, to certify to the State Treasurer, under the provisions of the 243d section of the act above recited, the said sum of $163.35, which is claimed by the plaintiff to have been an erroneous and improper payment by him to the Treasurer of State, and that the said defendants, the said board of commissioners, and each member thereof, have refused to direct said auditor to so certify, and said auditor refuses to so certify. It is further agreed that as to said payment of $163.35, in excess of what the plaintiff claims he ought to have paid to the Treasurer of State, when the same was paid, the plaintiff paid said amount under written protest that, as to said amount paid by him, the same was excessive and erroneous, and such protest was, at

the time, presented to and filed with said Treasurer of State by the plaintiff.

"The parties further agree that the claim of the plaintiff of his legal right, as such treasurer, to retain six per centum on said delinquent taxes so collected, and to have the proper certificates made to enable him to procure the said sum so paid by him to the State Treasurer, in excess of what he claims to be the proper amount, to be refunded to him, and the denial of such right by the defendants and each of them, is a matter in controversy between the parties, and that the same shall be submitted to the said circuit court of said county, upon this agreed statement of facts, and that the court shall render such judgment, upon these facts, as could be rendered in any legal proceedings that might be instituted by either party for the adjudication of the rights of the parties, and their duties as such officers, whether such proceedings were instituted upon an application for mandate, or for any other remedy under the laws of this State."

Upon the foregoing agreed statement of facts, the court's finding was in favor of the appellee, the plaintiff below, in effect, that he, as the treasurer of Vanderburgh county, was entitled to six per centum, as and for his lawful fees upon the amount of delinquent taxes collected by him, as set forth in said agreed statement of facts, to wit, upon the sum of $15,061.01; to which said finding the appellants at the time excepted. Thereupon the court rendered judgment for peremptory mandates against the appellants, in accordance with its finding, in favor of the appellee.

Errors are assigned by the appellants in this court, which call in question the finding and judgment of the trial court upon the agreed statement of facts.

The question for decision in this court, as it was in the circuit court, is this: Since the taking effect of an act, approved March 29th, 1881, entitled "An act concerning taxation," what fees or percentage are county treasurers entitled by law to receive and retain out of all delinquent taxes collected?

In section 262 of the above entitled act it is declared that "Inasmuch as an emergency exists, therefore this act shall take effect and be in force from and after its passage." The act in question was the law of this State, therefore, on the subject of taxation "and matters properly connected therewith," during all the time covered by the agreed statement of facts in this case.

The General Assembly of 1879 passed an act, approved March 31st, 1879, entitled "An act fixing certain fees to be taxed in the offices, and the salaries of officers therein named; providing for certain employes in certain public offices, and fixing their compensation; defining certain duties and liabilities of officers and persons therein named; providing for the disposition of certain moneys; making certain appropriations; declaring certain violations of the provisions of this act to be a penal offence, and prescribing the punishment, and repealing all conflicting laws." This act did not declare an emergency, either in a preamble or in the body of the law; but it took effect on May 31st, 1879, by having been "published and circulated in the several counties of this State, by authority." It was a general law "in relation to fees or salaries" of the officers therein named. Section 30 of this act (section 5928, R. S. 1881,) reads as follows:

"The county treasurers shall also charge and receive, as a further compensation, at the rate of one per centum on the first $100,000 of taxes by them collected, and on all sums collected in excess thereof, one-half of one per cent. They shall also receive and retain out of all delinquent taxes collected six per centum when paid voluntarily and without levy, and six per centum if paid after levy; and the treasurer shall be allowed the same fees and charges for making distress and sale of goods and chattels for the payment of taxes as may be allowed by law to constables for making levy and sale of property on execution. Treasurers shall, for their services in going to Indianapolis and returning by the nearest route by railroad, to make their semi-annual settlements

with the State Treasurer, receive from the State Treasurer at the rate of ten cents per mile."

The General Assembly of 1881 did not enact any law "in relation to fees or salaries" generally, but by an act approved April 16th, 1881, sections 16, 20 and 26 of the fee and salary law of March 31st, 1879, were amended. These sections fix the fees of clerks and sheriffs, but there is no amendment or express repeal of any of the provisions of the act of March 31st, 1879, concerning the fees of county treasurers, in any later law. In section 261 of the act of March 29th, 1881, concerning taxation, it is provided, that "All laws and parts of laws within the purview of this act are hereby repealed, except 'an act to levy an annual tax for the purpose of raising revenue,' approved March 3, 1877."

Section 165 of the act of March 29th, 1881 (section 6434, R. S. 1881), provides, that for levying and making sale of personal property to pay delinquent taxes, in addition to the fee for the demand upon the resident delinquent, the treasurer shall be allowed the same fees and charges as are allowed by law to constables for making levy and sale of personal property on execution, and expenses of taking care of property levied. In section 158 of the same act, the treasurer's fee for demand upon the resident delinquent, without levy, is fixed at twenty-five cents, and for such demand, where a levy is made, his fee is fixed at fifty cents. Section 6427, R. S. 1881. The only other section of said act in which anything is said in relation to the fees of the treasurer is section 251 (section 6519, R. S. 1881), which reads as follows:

"In all cases where school lands have been sold and a certificate has been issued to the purchaser or entered or recorded in the proper office or otherwise, and the purchaser has entered into possession and paid a part or the whole of the purchase-money, or could have entered into occupancy, such lands shall be deemed and held as having been sold so as to make them liable to taxation, within the meaning of the law, as fully and completely as they would have been had a deed been made and

delivered, and the fee had passed to the purchaser; and all appraisements of lands so sold, and all assessments of the same for taxes, and all levies and collections of taxes thereon, heretofore made, shall be, and are hereby legalized and declared to be lawful and valid, and shall in no wise be subject to question by reason of such sale not having been consummated by execution and delivery of deed. *But whenever any treasurer fails to collect the delinquent taxes for any year, and the same is carried over to the next year's duplicate, together with all penalties and interest, such treasurer shall not be entitled to any fee for collecting the delinquent part of said duplicate, more than he is entitled to by law for collecting the duplicate of the current year."*

It will be observed that the closing sentence, which we have italicized, of this section of the statute, has no connection whatever with the preceding provisions of the section, subjecting to taxation school lands, sold but not conveyed to the purchaser, and legalizing and validating all prior appraisements and assessments of such lands for taxation, and all levies and collections of taxes thereon theretofore made. The entire section is a reenactment, and is almost a literal copy of section 1 of an act approved February 8th, 1877, entitled "An act declaring school lands taxable after they have been sold and before deed is made, and legalizing all assessments, levy and collection of taxes heretofore made, and prohibiting the refunding of taxes paid, declaring an emergency, and other matters connected with the subject of taxation of school lands." The alterations or changes in section 1 of this act, as reenacted as section 251 above quoted, are merely verbal and not substantial, with the exception of the closing sentence, which we have italicized, in quoting the latter section. This latter sentence is a new provision, declaring the law upon a subject not embraced in or covered by either the title or body of the last entitled act of February 8th, 1877.

In section 19 of article 4 of the constitution of this State, it is provided that " Every act shall embrace but one subject and matters properly connected therewith ; which subject shall

be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." Sec. 115, R. S. 1881. Is the closing sentence of section 251, above quoted, embraced in the subject of the act concerning taxation, or is it matter properly connected with that subject? In section 22 of the same article of the constitution, in enumerating the several cases or subjects, in regard to which the General Assembly shall not pass local or special laws, the section separately specifies "the assessment and collection of taxes," as one case or subject, and "fees or salaries," as another case or subject. Sec. 118, R. S. 1881. Since the adoption of the constitution of 1851 the legislation on the subject of fees and salaries has generally been found in separate acts, devoted for the most part, if not exclusively, to that subject; and, in those separate acts, provision has always been made for the fees and salaries of county treasurers, for their services in the collection of taxes.

The question is, *not* what has been the previous course of legislation on the subject of fees and salaries, but the real question for decision may be thus stated: Is the closing sentence of section 251, above quoted, fixing the fees of county treasurers for the collection of delinquent taxes, repugnant to or in conflict with the provisions of section 19, of article 4, of the constitution? or, in other words, is that sentence of the section a matter properly connected with the subject of the above entitled act of March 29th, 1881, concerning taxation? When the constitutionality of a statute or any of its provisions has been under consideration, it has been the uniform rule in this court to construe and interpret the same, if it can be done, in such manner as to sustain and not defeat the law in question. It must appear very clearly that the legislation is repugnant to or in conflict with some express provision of the constitution, or the statute will be upheld. It is not enough that the constitutionality of the legislation may seem to be doubtful; for, in such case, the benefit of the

doubt must be given in favor of the constitutionality of the law. *Shoemaker* v. *Smith*, 37 Ind. 122; *Fry* v. *State*, 63 Ind. 552; *Clare* v. *State*, 68 Ind. 17; *McComas* v. *Krug*, 81 Ind. 327.

In the case at bar, we are of the opinion that the fees or salaries of county treasurers, the officers charged by law with the collection of taxes, are matters properly connected with the subject of "An act concerning taxation;" and that the closing sentence of section 251 of the act, fixing the fees of such officers for the collection of delinquent taxes, is a constitutional and valid enactment. As that sentence contains the latest expression of the legislative will on the subject of such fees, it of course repeals by implication so much of section 30 of the fee and salary act of March 31st, 1879 (sec. 5928, R. S. 1881), as is in conflict therewith, and no more. It is a new and independent provision, not connected in the slightest degree with the preceding portion of the section in which it is found, and not, as it seems, in its proper place. But the General Assembly, in the exercise of its supreme and sovereign legislative power, was fully authorized to enact the provision in question, and to interject or insert it in the act, in any section or at any point, and, wherever found, it is the law. The court erred, we think, in its finding upon the agreed statement of facts.

The judgment is reversed, with costs, and the cause is remanded with instructions to find for the defendants below, upon the agreed statement of facts, and render judgment accordingly.