State, *ex rel.* Duensing, *v.* Roby *et al.*

No. 17,639.

STATE OF INDIANA, EX REL. DUENSING, *v.* ROBY ET AL.

CONSTITUTIONAL LAW.—*Injunction.—Bond.—Due Process of Law.*—
Allowing an injunction without a bond to prevent the use of property in violation of a statute does not deprive the owner of his property without due process of law.

SAME.—*State Interfering with Use of Private Property.—Police Power.*—The right of the State to interfere with the use of private property by its owner belongs to the police power of the State.

SAME.—*Police Power.—Horse Racing.*—A statute prohibiting horse races during the winter months, or public race meetings on any track more than three times in any year, or more than fifteen days at a time, or more than twice in sixty days, or with less than thirty days between meetings, is a legitimate exercise of the police power of the State.

CRIMINAL LAW.—*Jeopardy.—Civil Remedy in Addition to Criminal.—Injunction.*—A suit for an injunction against the violation of a statute and punishment for contempt of such an injunction, in addition to a criminal prosecution for the illegal act, do not violate the constitutional provision against putting a person twice in jeopardy for the same offense.

HORSE RACING.—*Prohibition Of.—Statute Construed.—Change of Persons, Companies, Associations, or Corporations.*—A change of the persons, companies, associations, or corporations who hold race meetings on the same track, does not relieve from or avoid the prohibition of the act of 1895, against holding race meetings more than three times in a year, or twice in sixty days, or with less than thirty days intervening.

STATUTORY CONSTRUCTION.—*Statute Providing Both Civil and Criminal Remedies for Its Violation.—Constitutional Law.*—A provision for civil remedies and procedure, as well as criminal prosecutions for violation of other provisions of the same statute, does not make it invalid as including more than one subject of legislation.

SAME.—*Violating Statute.—Remedies Criminal and Civil.—Constitution.*—The constitutional provision against local or special laws regulating practice in courts of justice is not violated by including in a statute a provision for remedies both civil and criminal in case of its violation.

SAME.—*Construction.—History of the Times.*—A court will examine the history of the times in construing a statute, so as to relieve from the mischief and accomplish the purpose of the act.

SAME.—*Construction.—Horse Racing.—Extending Provisions.—Title of Act.*—The terms "race" and "race meeting," as used in the

State, *ex rel.* Duensing, *v.* Roby *et al.*

act of 1895, section 2, without expressly limiting them to horse racing, will not be construed as extending the provisions of the act to embrace a subject not expressed in the title, which is "An act regulating horse racing."

SAME.—*Penal Statute.—Title of Act.—Extension of Meaning.*—The doctrine of strict construction of a penal statute does not apply to expand or extend general words used in the body of a statute beyond the scope of the title, so as to make the act invalid.

From the Lake Circuit Court.

*W. A. Ketcham*, Attorney General, *J. Kopelke, T. H. Heard, J. G. Ibach, W. H. H. Miller, F. Winter* and *J. B. Elam*, for appellant.

*J. W. Youche, W. Olds, C. F. Griffin* and *J. B. Peterson*, for appellees.

MCCABE, J.—The Governor of this State in his biennial message to the Legislature of the State in January, 1895, called attention to certain facts, and made certain recommendations for the consideration of that body as follows:

### WINTER RACING.

"Near the city of Hammond there has been located what is known as the 'Roby Fair Association.' It is not incorporated under the laws of this State, nor, so far as I can ascertain, of any State; and what is the legal nature of the association is sedulously concealed. What its actual nature is, its purposes and character are without any concealment. It is simply an immense gambling concern, with a racing attachment to give it the appearance of respectability, and draws within our borders the lawless and disreputable elements of Chicago, for a purpose that is not permitted, nor could be tolerated within that city's limits. Its every influence is demoralizing, encouraging vice, propagating crime, and thus brings our State into disrepute. Its transactions have been open and notorious, but the authorities of Lake county seem to be either indisposed or powerless to pre-

State, *ex rel.* Duensing, *v.* Roby *et al.*

vent them.   I have been earnestly seeking some means, warranted by law, by which this disgrace to our State could be prevented, and although having the able advice, earnest assistance, and active co-operation of Attorney-General Ketcham, have failed to find the way  *  *  *.

"To contend that racing of horses can be humanely or interestingly conducted in this climate during the winter months, is a rank delusion and fraud.   It is but a cloak to deceive and afford opportunity to conduct gambling on a gigantic scale and the assembling of disreputable crowds.

*     *     *     *     *     *     *

"I, therefore, in the name of the people, insist that you shall take action upon this subject, and recommend that you make it unlawful for any association within the State to hold such meetings between the first day of November and the first day of April, that no race meetings shall be held within the State, except by associations duly incorporated under the laws of this State."

Pursuant to this information and recommendation, that Legislature passed the following act:   (Acts 1895, p. 92.)

"An act regulating horse racing, defining the meaning of certain terms, prohibiting horse racing at certain seasons, prescribing a penalty for a violation of the provisions of this act, prescribing rules of procedure, giving certain civil remedies, authorizing the institution of civil suits, and declaring an emergency.

"Section 1.   Be it enacted by the General Assembly of the State of Indiana, that it shall be unlawful for any person, corporation, company or association to cause, permit, or allow any horse, mare, filly, gelding, colt or mule to race on any track or course wholly or partly within this State at any time between the fifteenth day of November and the fifteenth day of April in any year

State, *ex rel.* Duensing, *v.* Roby *et al.*

for a purse or a prize in the presence of fifty persons or more, or in cases where advertisements or notices of such race or races are published or given notifying the public that such a race will take place. Any person, corporation, company or association aiding or abetting in such race by taking part in advertising therefor, or by furnishing any animal to participate in such race, or by acting as driver therein, or by allowing or suffering the use of a track, course, or other place owned, managed or controlled by him or it, or by aiding in any way in conducting such race, shall be deemed guilty of a misdemeanor and shall be fined not less than one hundred dollars nor more than five hundred dollars, to which may be added imprisonment in the county jail for a period not exceeding six months.

"Sec. 2. It shall be unlawful for any person, corporation, company or association to hold or advertise for a race meeting oftener than three times in any year, and no race meeting shall be held longer than fifteen days. It shall be unlawful to hold any race meeting oftener than twice in any period of sixty days, and it shall also be unlawful to hold any race meeting until after the full period of thirty days has elapsed after meeting has been held. Any person violating the provisions of this section, or aiding or abetting in the violation thereof shall be fined in any sum not less than one hundred dollars, nor more than five hundred dollars, to which may be added imprisonment in the county jail for a period not exceeding sixty days.

"Sec. 3. The term 'race,' as herein used, shall be taken to mean any and all trials of speed of animals of the horse kind, and any and all matches where such animals are suffered to run, gallop, pace or trot for money or prizes, or upon public exhibition, on any track or course.

"The term 'race meeting,' as used in this act, shall be

taken to mean and include all assemblies of persons, or all meetings of persons, who come together, or are notified to come together, for the purpose of witnessing any trial of speed, whether running, galloping, pacing or trotting.

"The terms 'track' or 'course' shall be deemed to mean and include all places prepared, used, kept or maintained for the purpose of conducting races, or of giving public exhibitions of trials of speed or matches between animals of the horse kind, wherein prizes, money or reward is contested for by running, galloping, trotting or pacing.

"Sec. 4. In case of a violation of any of the provisions hereof by any person, whether he was at the time acting with the sanction of the owner, lessee or manager of such track or not, it shall be competent for any citizen of the State to file an information, in the name of the State, on his relation, in the Circuit Court of the county where such track is situate, alleging that any of the provisions hereof, and that the person or persons against whom such information is filed threaten, propose or give out that he or they will do any act hereby prohibited, has been violated, whereupon it shall be the duty of such Court, or the Judge thereof in vacation, to issue a temporary restraining order restraining all persons from in any way violating or assisting in the violation of this act. As soon thereafter as possible the Court or Judge shall direct notice to be given to all defendants, so far as they can be reached by notice, that at a certain time, to be fixed by the Court or Judge, they may appear and show cause, if any they have, why such order shall not continue until the final hearing. Such notice may be served upon any agent, employe or servant of the defendant or defendants, and shall be as effective as if served upon the defendant or defendants personally, or

State, *ex rel.* Duensing, *v.* Roby *et al.*

if the defendants are not residents of this State or are unknown or cannot be found, notice may be given by publication as hereinafter provided.

"Sec. 5. All persons who appear to have any interest in such race track property upon the records of the county may be made defendants to such suit, and such persons, as well as all others concerned (the latter of whom need not be mentioned by name) may be notified of the pendency of such proceedings for at least two weeks by publication in some weekly newspaper of the county, of general circulation therein. At the expiration of such time any person having a legal interest in the result of such suit may, upon petition, be admitted as an additional party defendant. Any person having an interest in such property, whether made a party or not, shall be bound by the judgment.

"Sec. 6. Changes of venue may be granted from the county to either party, as in other cases, and the relator shall not be liable for any costs. The suit shall be prosecuted either by the prosecuting attorney or, at the request of the Governor, by the Attorney-General or by an attorney designated by the Governor.

"Sec. 7. An emergency is declared to exist for the immediate taking effect of the act, and it is therefore declared to be in effect from and after its passage."

On May 8, 1895, this suit was begun by the appellant under the provisions of the above statute, by filing a complaint or information, in a single paragraph, against the appellees, in the Lake Circuit Court, in the name of the State, on the relation of Julius Duensing, a citizen of the State of Indiana, which was duly verified. A temporary injunction was granted until the final hearing.

On May 15, 1895, on the motion of appellee Roby, the temporary injunction was dissolved.

On May 24, 1895, being the 29th judicial day of the

April term of said circuit court, the appellant filed a
verified amended information in two paragraphs. And
afterwards, at the same term, filed a supplemental in-
formation on leave of court, which was also duly veri-
fied.

Afterwards the defendants, Edward Roby, Edward A.
Shedd, Charles B. Shedd, The Roby Fair Association, The
Roby Breeders' Association, John Condon, Rod Wells and
John Kelsey, appeared and separately demurred to the
information, and to each paragraph thereof, and to the
supplemental information for want of sufficient facts,
which demurrer the court sustained, and the plaintiff
refusing to further plead, the appellees took judgment
upon the demurrer that the plaintiff take nothing by
this suit.

The substance of the first paragraph of the amended
information is that the relator informs the court that
he is a citizen of the State of Indiana, prosecuting this
action, at the request of the Governor of the State, by the
attorney-general; and that the defendants Roby and the
Shedds are the owners, as appears of record in the re-
corder's office of said county of certain real estate, de-
scribing it, situated in said county; that the other de-
fendants, to-wit: James A. Webb, The Indiana Racing
Association, The Roby Breeders' Association, The Roby
Fair Association, and The Hammond Fair Association,
John Condon, Rodman Wells, John Kelsey, ———
Dwyer, whose christian name is to the plaintiff unknown,
with others whose names are unknown to the relator,
have either jointly or separately some interest in, or
contracts in relation to, said real estate as to its use
and occupancy, but which interest does not appear
of record in the recorder's office of the county or
elsewhere, and hence plaintiff is unable to set it forth
but makes them defendants to answer as to their inter-

est; that The Indiana Racing Association, The Roby Breeders' Association, The Roby Fair Association, and The Hammond Fair Association are not, nor is either of them incorporated under the laws of the State of Indiana; that said association defendants and each of them are partnerships or some other form of association of the particulars or character of which the relator is not advised; that said defendants, other than Roby and Shedds, are each and all interested as partners or otherwise in said several associations or partnerships for the purpose of carrying on racing upon the premises herein described, and are organized and doing business under said several and different names for the purpose of evading the statutes of the State of Indiana in that behalf enacted, as hereinafter more fully averred and set forth; that there is situated upon the real estate a race track or course, prepared, used, kept, and maintained by the defendants for the purpose of conducting races and holding race meetings to give public exhibitions of trials of speed or matches between animals of the horse kind, wherein prizes, money and rewards are contested for by running, galloping, trotting or pacing of such animals, and for the purpose of assemblies and meetings who come together for the purpose of witnessing such trials of speed, which place, track, and course are commonly known and designated as the "Roby Race Track;" that on April 15, 1895, previous notice thereof having been given by publication in newspapers, a certain race meeting was held to continue according to such notice, for a period of fifteen days from, after, and including said April 15, upon said grounds, and continuously from said 15th day of April, for a period of fifteen days, excluding Sundays, said race meeting was held, whereat were given races upon each and every day, except Sundays, up to and including the second day of May, 1895,

such race meeting being held by the defendants other than the defendants Roby and Shedd, under the name and designation of "The Roby Fair Association," each of said defendants, other than Roby and Shedd, participating together with other persons to the plaintiff unknown in the holding of said race meeting, and the defendants Roby and Shedd having full knowledge at the time such race meeting was being held and such races were being run upon the real estate hereinbefore described, of which they were the owners as aforesaid; that thereupon, at and prior to the third day of May, 1895, the defendants, other than Roby and Shedd, did, with their knowledge, consent, connivance, assistance and co-operation and with that of others, cause notice to be published that commencing with May 3, 1895, and thenceforward continuously for a period of fifteen days, "The Roby Breeders" Association would hold a race meeting, and would upon each day for a period of fifteen days from after and including said third day of May, but excluding Sundays, give races, trials and exhibitions of speed and matches wherein animals of the horse kind would be permitted to run, gallop, pace and trot for money and other prizes upon public exhibition; and upon said May 3, 1895, and at and prior to the filing of the original information, said defendants, other than Roby and Shedd, did, as advertised, begin a race meeting before the period of thirty days had elapsed from and after the first race meeting as hereinbefore set forth, and said last named race meeting, when taken in connection with the first, constitutes a holding of a race meeting oftener than twice in a period of sixty days, contrary to and in violation of the statute in such cases made and provided, which last named race meeting was begun and continued from day to day until the same was enjoined and restrained by the temporary injunc-

tion already mentioned, with the knowledge, consent, acquiescence, and connivance of the defendant Roby and the defendant Shedd, by the same parties, to-wit : the defendants herein and others unknown to the plaintiff, under the name of The Roby Breeders' Association, who, under the name of The Roby Fair Association, held said first named race meeting as hereinbefore averred ; that the above named defendants, other than Roby and Shedd, with the knowledge, consent, acquiescence, and connivance of the defendant Roby and the defendant Shedd, with other persons concerned, connected and interested with them, whose names are unknown to the relator and to the plaintiff, threaten, propose and give out that they will hold such race meetings oftener than three times in any one year ; that they will hold such race meetings longer than fifteen days at a time ; that they will hold and cause such race meetings to be held, but under different names, oftener than twice in any period of sixty days ; that they will not allow thirty days to elapse after any such race meeting has been held by them until they will hold another on said premises ; that as soon as one race meeting of fifteen days duration has been held by them, they will hold other meetings and continue such meetings, but for the purpose of evading the law, while seeming to comply therewith, they will hold such race meetings, while in their interest and by them or by some of them, under different names, and that the owners of said race-track property concur and unite with the other defendants in their said threats and propositions to continue such race meetings continuously ; that each of the race meetings heretofore held and that are proposed to be held by said defendants, are all in the interest of the owners of said real estate and race-track property, and of the other defendants hereto en-

State, *ex rel.* Duensing, *v.* Roby *et al.*

gaged in the business of racing and holding race meetings; that the defendants herein and the parties whose names are unknown to the plaintiff, are members of the said several associations herein named, and that said associations are in truth and in fact one and the same association maintained and controlled by the same parties and for the same purposes; that since the filing of the original complaint herein, the defendant, the Hammond Fair Association, has been organized for the purpose of advertising and holding a race meeting upon said real estate, and therefore it is a proper party defendant herein, and plaintiff asks that it be made a party defendant and to amend the complaint in that respect. That the defendant Edward A. Shedd was not originally made a party defendant hereto, by inadvertence and oversight, but that he has an interest in the subject-matter of this action by reason of his interest in said real estate, and plaintiff, therefore, asks leave to make him a party defendant. Prayer for a temporary restraining order, and on the final hearing for a perpetual injunction.

The second paragraph only differs from the first in substance, in that it alleges that said defendants Roby and Shedd had leased said premises, said track and course, to the other defendants, and such incidental changes as that change would require.

The supplemental information only differs in substance from the first paragraph, in that it states dates of race meetings differently and makes a new party defendant not before brought in, Louis E. Hohman. The demurrer to these several pleadings presents substantially the same question, and has been so treated in the main by the counsel.

The action of the trial court in sustaining the demur-

rer is defended by appellees' learned counsel, on the ground, mainly, that the statute is unconstitutional.

Their first contention, however, is that the first section is void because they say it is insensible.

It is assumed by the appellant's counsel that it was intended to prohibit winter racing, that is, horse racing between the 15th day of November and the 15th day of April. But appellees' counsel contend that it does not mean that at all, because the inhibition is "at any time between the 15th day of November and the 15th day of April in any year."

They contend that the period of time there designated must be that period intervening between April 15th and November 15th in the same year, thus making the statute prohibit summer racing instead of winter racing. This, they say, contradicts that part of the clause which makes the forbidden period begin the next day after the 15th day of November, and end with the day before the 15th day of April, which plainly requires the time prohibited to run forward and not backwards.

But it is not the first section with a violation of which the appellees were charged in the information, nor against a threatened violation of which the injunction was sought by the appellant. It will be time enough to construe that section when the question arises.

It is for an alleged violation of section two of the act, that this action was brought, such action being authorized by sections four and five. But it is contended that the second section is unconstitutional because not covered by the title of the act, and that the whole act is in violation of the constitution of the State, in that it embraces two distinct subjects of legislation, namely, the creation of misdemeanors, prescribing punishment therefor, and creating certain civil remedies authorizing the institution of civil suits and prescribing rules of procedure therein.

In *Robinson* v. *Schenck*, 102 Ind. 307, at page 319, it was said: ''The power to declare a statute void on the ground that it is in conflict with the Constitution is peculiar to the American courts, and the doctrine established by our cases is not found in other systems of jurisprudence. The early cases * * show that the courts at first asserted this doctrine with much hesitation, and there are still some writers who deny the existence of the power, but it is now firmly fixed in our law (citing authority). * * * The power is one of the highest possessed by any judicial tribunal in the world, and is, as all the authorities agree, to be exercised with the utmost care and only in the clearest cases. If there is a doubt in the mind of the court as to the validity of the statute, it must be resolved in favor of the Legislature.'' There are many good reasons in support of the principles thus announced. Under our form of government there never ought to have been any doubt of the right and the duty of courts in a proper case to declare a statute void because of its conflict with the constitution. This right and duty does not grow out of the condition that statutes and acts of the legislative department within its domain are not absolutely binding upon the judiciary. But it grows out of the fact that the constitution is the supreme law of the land. Hence, when it is found that a statute contravenes its mandates the duty to support the constitution, emphasized by the solemn sanctions of an oath, can only be discharged by overthrowing the statute.

On the other hand acts of the Legislature come to us as the expression of the will of the sovereign people clothed with the majesty of law, imposing upon the judiciary the solemn duty of upholding the same, unless found to clearly conflict with the Constitution, State or Federal. There is the best of reasons why doubts should

State, *ex rel.* Duensing. *v.* Roby *et al.*  .

be solved in favor of the validity of the act of the Legislature.   In case of doubt there might be a mistake in declaring the act unconstitutional by the court.   To declare an act void for unconstitutionality in a doubtful case through a mistake of a court of last resort would have the effect not only of paralyzing one of the co-ordinate departments of the State government, but it would be an usurpation of power by the court, a power withheld from it by the people in the constitution.

The dangerous consequences liable to result from a possible mistake in declaring an act of the Legislature void for unconstitutionality, are sufficient alone to inspire the judiciary with the greatest caution in that respect, and furnish ample justification for the rule that no statute will be declared unconstitutional unless its conflict with the constitution is beyond reasonable doubt. Guided by these salutary rules, we proceed to examine the constitutional question.

It is contended that the second section is void because not within the title of the act.   As we have seen, the title of the act is limited to regulating horse racing and prohibiting the same at certain seasons of the year.   The contention is that the second section only prohibits "race meetings" oftener than three times in any year, and the holding of race meetings longer than fifteen days, or oftener than twice in any period of sixty days, and the period between such meetings is required to be not less than thirty days, without any requirement that the race meetings thus limited and restricted were meetings for horse racing.   It is contended that as the term "horse" is not once mentioned in the section, and as that part of section 3, which undertakes to define the terms "race" and "race meeting," as used in the act, also fails to mention the term "horse," both sections may include other kinds of races or trials of speed,

such as races between cattle, men, reindeer, dogs, or other beings or animals that can run, gallop, pace or trot, and therefore it embraces a subject not expressed in the title.

It is true the title is so framed as to limit the act to racing of horses, and it is true also that section 2 does not use the term "horse" or "horse racing," and it is also true that the defining part of section 3 as to the meaning of the terms "race" and "race meeting" does not use the term "horse" or "horse racing," but the concluding clause of section 3 does use the language, "giving public exhibitions of trials of speed or matches between animals of the horse kind by * * running, galloping, trotting or pacing." This gives an indication of the particular kind of racing the Legislature had in mind in both sections. In construing an act the court ought to examine the history of the times so as to relieve from the mischief and accomplish the purpose of the act. Maxwell Interpretation of Statutes, pp. 133, 318, 333, 345; Potter & Dwarris, pp. 240, 247, 262; Suth. Stat. Con., sections 234, 235, 241, 246, 349, 354, 356. In *Stout* v. *Board, etc.*, 107 Ind., 343, at p. 347, it was said: "The legislative intention, as collected from an examination of the whole, as well as the separate parts, of a statute, will prevail over the literal import of particular terms, and will control the strict letter of the statute where an adherence to such strict letter would lead to injustice, to absurdity, or contradictory provisions." *U. S. Savings, etc , Co.* v. *Harris*, 142 Ind. 226, and authorities there cited.

In view of the current historical facts to which the legislative attention was called by the Governor's message, and in view of the whole act including its title, it would be difficult to say that the terms "race" and "race meetings" used in the second section did not re-

fer to and mean only horse races and meetings for having and carrying on horse races. Especially is this true in view of the fact that the public morals and good order of society were never threatened by cow races or cattle races, dog races, or any kind of races other than horse races.

An eminent author states the rule thus: "The practical inquiry is usually what a particular provision, clause or word means. To answer it one must proceed as he would with any other composition; construe it with reference to the leading idea or purpose of the whole instrument. The whole and every part must be considered. The general intent should be kept in view in determining the scope and meaning of any part. This survey and comparison are necessary to ascertain the purpose of the act and to make all the parts harmonious. They are to be brought into accord, if practicable, and thus if possible, give a sensible and intelligible effect to each in furtherance of the general design." Suth. Stat. Con., section 239. The same author says: "If the meaning is doubtful, the title if expressive may have the effect to resolve the doubts by extension of the purview, or by restraining it," *id.* section 210. "But the title of an act is now so associated with it in the process of legislation that when, in performing its constitutional functions, it affords means of determining the legislative intent, in cases of doubt its help cannot be rejected for being extrinsic and extra legislative. The language of an act should be construed in view of its title and its lawful purposes; broad language should be confined to lawful objects," *id.* section 211. To the same effect is *Garrigus* v. *Board, etc.*, 39 Ind. 66.

Guided by these rules, we would be justified in holding that no other racing than horse racing, and no other

race meetings were intended in the act than those at which horses were to be run.

At least there must be a reasonable doubt whether those terms as used in section 2 did not have reference solely to horse races and meetings for the purpose of carrying on horse races and horse racing. That doubt should be resolved in favor of that construction that would bring the section within the title and thus uphold its constitutionality. Where the constitutionality of a statute or any of its provisions is under consideration, it has been the uniform rule of this court to so construe and interpret it, if possible, as to sustain and not defeat the law; and it is not enough that the constitutionality of the legislation may seem to be doubtful, for in such case the benefit of the doubt must be given in favor of the constitutionality of the legislation. *Warren* v. *Britton,* 84 Ind. 14; *Campbell* v. *Dwiggins,* 83 Ind. 473; *Hays* v. *Tippy,* 91 Ind. 102.

But the learned counsel, for the purpose of showing that the section is not covered by the title, invoke the aid of the rule of strict construction. They contend that the section is highly penal and must be strictly construed; and in support thereof quote the following rules : " Penal statutes receive a strict interpretation. The general words of a penal statute shall be restrained, for the benefit of him against whom the penalty is inflicted. * * * (Potter & Dwarris, 245.) * * * The law of England does not allow of constructive offenses. No man incurs a penalty unless the act which subjects him to it is clearly both within the spirit and the letter of the statute imposing such penalty. *Id.* 247, * * * By another restrictive rule of construing penal statutes, if general words follow an enumeration of particular cases, such general words are held to apply only

State, *ex rel.* Duensing, *v.* Roby *et al.*

to cases of the same kind as those which are expressly mentioned, *id.* 247."

Without deciding that these rules of strict construction are entirely and fully applicable at this day in this State, it is sufficient to say that they work against appellees' contention as to the construction of section 2 of the act. The appellees are not asking to restrain the general words of the section, but to expand and extend them. It is the appellant that asks to restrict the words of the section to their narrowest possible scope by confining them to horse racing alone, while the appellees want, under the guise of strict construction, to extend their meaning so as to include all kinds of racing between all kinds of animals, and all kinds of things, in order to reach a conclusion that the section is not covered by the title, that this court may declare it unconstitutional. The doctrine of strict construction of a penal statute does not serve appellees' purpose or aid them in their contention.

We come now to the objection that the act embraces more than one subject of legislation in creating and defining misdemeanors and prescribing punishment therefor, and authorizing the civil remedies and the institution of civil suits and prescribing rules of procedure therein.

In *Warren* v. *Britton, supra,* at page 23, it was said : ''In the case at bar we are of opinion that the fees or salaries of county treasurers, the officers charged by the law with the collection of taxes, are matters properly connected with the subject of 'An act concerning taxation;' and that the closing sentence of section 251 of the act fixing the fees of such officers for collection of delinquent taxes, is a constitutional and valid enactment."

The fee and salary law of 1879 contained a provision

in relation to the publication of the delinquent list and the price thereof, and it was contended that the latter provision made the act embrace two subjects, and therefore void. It was said by this court of that statute that: "The act does not embrace two subjects. It makes provision for the performance of certain duties by public officers, and prescribes the compensation which shall be paid to officers or others rendering service to the public, in connection with public matters and official duties. Whatever is connected with official duty and is the subject of compensation from the public treasury, is within the act, and forms part of one general subject. * * * No provision of the constitution is invaded by gathering such provisions together in one general act." *Bitters* v. *Board, etc.*, 81 Ind. 125 (127). To the same effect are: *Benson, Admr.*, v. *Christian*, 129 Ind. 535; *Farrell* v. *State*, 45 Ind. 371; *Thomasson* v. *State*, 15 Ind. 449; *Reams* v. *State*, 23 Ind. 111; *Bank, etc.*, v. *City of New Albany*, 11 Ind. 139; *State, ex rel.*, v. *Sullivan*, 74 Ind. 121; *City of Indianapolis* v. *Huegele*, 115 Ind. 581; *Hunter* v. *Burnsville, etc., Co.*, 56 Ind. 213; *Walker* v. *Dunham, Sec'y of State*, 17 Ind. 483; *McCaslin* v. *State, ex rel.*, 44 Ind. 151.

The title of an act was "An act providing for the election or appointment of supervisors of highways and prescribing certain of their duties," under which there was a provision authorizing the supervisor to bring a civil suit for the obstruction of a highway to recover damages, and it was held not to embrace two subjects, and that such provision was properly placed under the title. *Indiana, etc., R. W. Co.* v. *Potts*, 7 Ind. 681. To the same effect is *Hines* v. *Aydelotte*, 29 Ind. 518.

*Hingle* v. *State*, 24 Ind. 28, is a case upon the question here involved, and is perhaps more frequently re-

State, *ex rel.* Duensing, *v.* Roby *et al.*

ferred to in the subsequent decisions of this court as furnishing a more correct standard than any other.

It was there said by Mr. Justice Frazer, whose name adds weight to the decision, speaking for the court, that : ''The words 'subject' and 'matter' are often used as synonymous. Indeed, in the sense in which they are employed in the constitution, they are as nearly so as it is possible for two English words to be, and both are used simply to avoid repetition. The only difference between them is created by the offices which they are respectively made to perform in the clause in question. 'Every act shall embrace but one *subject*, and *matters* properly connected therewith, which *subject* shall be expressed in the title.' Now it is quite evident that the word 'subject' is here used to indicate the chief thing about which legislation is had, and 'matters,' the things which are secondary, subordinate or incidental. * * * Is the insertion in an act to regulate the liquor traffic, of a section conferring upon particular courts jurisdiction of cases prosecuted for its violation, within any of the mischiefs intended to be prevented? This question can only be answered in the negative, and such an answer conclusively disposes of this constitutional objection. We happen to have laws in force by the operation of which, when a new offense is created, some one of our courts can take jurisdiction of it. * * * In the absence of such statutes, the creation of a new offense would beget a necessity for conferring jurisdiction of it upon some court. Can there be a doubt then that the two things are properly connected, as the constitution requires? It really seems that to state the question ought to be sufficient.''

That case and its reasoning are closely analogous to the case before us. If the civil remedy provided in the statute under consideration extended to the suppression of all violations of law and public morals, or any part

of them, outside of the things made unlawful in the main part of the act, then the case referred to would have no bearing, and the act would embrace two independent and separate subjects of legislation. But the civil remedy provided has no connection with any other subject of legislation, either direct or remote. It has no connection with any other crime or misdemeanor than those defined in the act. Nor can it be used to suppress any other violation of law than those that fall within the provisions of the act.

It is necessarily and inherently connected with the main part of the act making horse racing and its incidents unlawful at certain times and under certain circumstances. Indeed, the connection between the two things is so inherent and necessary that the civil-remedy part of the act would be nugatory and fall to the ground without the main part of the act. It was designed as an additional and more efficient means of preventing a violation of the main part of the act. It was therefore a matter properly connected with the subject of the act, within the meaning of the provision of the constitution quoted.

It is further contended that the act violates section 22, of article 4, of the constitation, which forbids the passage of local or special laws upon the subject of "regulating the practice in courts of justice" among other things. That question is decided directly against such contention, in *Hingle* v. *State, supra*, and cases there cited, and *Board, etc.,* v. *Silvers*, 22 Ind. 491 ; *Toledo, etc., R. W. Co.* v. *Nordyke,* 27 Ind. 95.

It is further contended that the act violates section 14, of article 1, of the State constitution, which provides that : "No person shall be put in jeopardy twice for the same offense." It is insisted that the defendant may be punished by a fine on a criminal prosecution and again

made subject to an injunction and deprived of the use
of his property, thus punishing him twice for the same
offense or act.    But the civil suit authorized by the act
is not a criminal prosecution, and the injunction is not
a punishment within the meaning of the section of the
constitution cited.    *State, ex rel.,* v. *Vankirk,* 27 Ind.
121.    But it is further contended that in case of a vio-
lation of an injunction under the civil-remedy part of
the act the court might fine the defendant for contempt
for disobeying the order of injunction, and that would
make him liable to double punishment.    The statement
of that proposition furnishes a sufficient answer thereto.
In that case he would not be punished for crime, but for
contempt of court.    *State, ex rel.,* v. *Schoonovér,* 135
Ind. 526 (21 L. R. A. 767); *State, ex rel.,* v. *Stevens,*
103 Ind. 55..

It is also objected that the act as to the civil remedy
part thereof violates the State and Federal constitutions
in that it deprives the owner of his property without due
process of law.    This objection is founded on the fact
that the act provides that the injunction may issue with-
out any provision for a bond.

The contention is that so long as the injunction re-
mained in force the defendant is deprived of the use of his
property without recourse or remedy, though the injunc-
tion is afterwards dissolved because improvidently or
wrongfully issued.

The same objections might be urged against that large
class of injunctions where no temporary restraining
order is asked, no bond given, and no injunction awarded
until the final hearing, when a perpetual injunction is
granted without bond, but which judgment is afterwards
reversed on appeal.    In that case the successful appel-
lant has no remedy.

But it is a serious mistake to suppose that the injunc-

tion provided for in any just or legal sense deprives the defendant of the use of his property. The fourth section authorizes the judge, in vacation, "to issue a temporary restraining order, restraining all persons from in any way violating or assisting in the violation of this act." And the section further provides for "notice to all concerned to appear and show cause, if any they have, why such order shall not continue until the final hearing." And the clear intent of the act is, that on the final hearing, if the facts set forth in the information are established by the evidence, the temporary injunction shall be made perpetual, of what use of the property does the injunction deprive the owner? None on earth, except a criminal use; none except that which is made criminal by the other part of the statute. The provision of the constitutions, State and Federal, securing to every person for injury done him in person or property due process of law, were never designed to protect him in the commission of crimes or misdemeanors. After the issue of the injunction, either temporary or final, the defendant or the owner may use his property for any and every purpose, except in violation of the criminal part of this statute. He may use it even for the purpose of horse racing and holding race meetings; "for the purpose of conducting races, or giving public exhibitions of trials of speed or matches between animals of the horse kind, wherein prizes, money, or reward is contested for by running, galloping, trotting or pacing," provided such meetings are not held oftener than three times in any year, and any such meeting is not held longer than fifteen days or oftener than twice in any period of sixty days, and that any such meeting is not held until after the full period of thirty days has elapsed after one such meeting has been held; and provided such races are not conducted at such seasons of the year as fall

within the prohibition of section 1 of the act. That section only prohibits such races during certain months of the year.

But it is insisted that the charge against the defendant-owner may be false, and that while he is waiting trial he is suffering unjustly. If he is falsely charged in the information with a violation of the statute while he in fact is not violating it, the injunction will not interrupt him in pursuing the even tenor of his way.

Therefore, the injunction provided for does not deprive the owner of the free use of his property for any lawful purpose, and the statute does not deprive him of due process of law.

It is further contended that the civil remedy provided violates the constitution in depriving the defendant of a jury trial. That question, however, is not presented by the record, no jury having been demanded or refused.

It is further claimed that the act is void because it provided for an unwarrantable interference with the management of private property by its owner. "The legislative authority of this State is the right to exercise supreme and sovereign power subject to no restriction except those imposed by our own constitution, by the federal constitution, and by the laws and treaties made under it." *Hedderich* v. *State*, 101 Ind. 564, and authorities there cited; *State, ex rel.*, v. *McClelland*, 138 Ind. 395, and authorities there cited.

The right of the State to interfere with the use of private property by its owner, belongs to the police power of the State. It was said by this court in *Champer* v. *City of Greencastle*, 138 Ind. 339 (24 L. R. A. 768), that: "The police power of the State, so far, has not received a full and complete definition. It may be said, however, to be the right of the State or State functionary, to prescribe regulations for the good order, peace, health, pro-

tection, comfort, convenience and morals of the community, which do not encroach on a like power vested in Congress by the federal constitution, or which do not violate any of the provisions of the organic law. Of this power it may be said that it is known when and where it begins but not when and where it terminates. But this power, whatever may be its limits, resides in the State in its sovereign capacity."

We think the act was a legitimate exercise of the police power of the State. *Fry* v. *State*, 63 Ind. 552; *Shuman* v. *City of Fort Wayne*, 127 Ind. 109 (11 L. R. A. 378); *Jamieson* v. *Indiana Nat. Gas and Oil Co.*, 128 Ind. 555 (12 L. R. A. 652); *Baumgartner* v. *Hasty*, 100 Ind. 575; *Powell* v. *Pennsylvania*, 127 U. S. 678; *Town of Lake View* v. *Rosehill, etc.*, 70 Ill. 191; Tiedeman Lim. Pol. Power, 203; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *Mugler* v. *Kansas*, 123 U. S. 623; *Kidd* v. *Pearson*, 128 U. S. 1; *Eilenbecker* v. *Dist. Ct. Plymouth County*, 134 U. S. 31.

It is also urged that the act is unconstitutional because it provides in the fifth section that: "Any person having an interest in such property, whether made a party or not, shall be bound by the judgment." It is sufficient to say that no such party is now before this court raising such question, the only question presented being raised by the appellees, who were made parties to the information to which they successfully demurred. It will be time enough to decide that question when it is presented.

Another objection urged to the validity of the act is that it prohibits race meetings oftener than three times in any year, or oftener than twice in any period of sixty days, and within less than a period of thirty days between meetings throughout the entire State. That is, that if such a meeting should be held at the Roby race track at

State, *ex rel.* Duensing, *v.* Roby *et al.*

a stated period, and another should be held at Evansville in less than thirty days therefrom, those holding the latter would violate the statute. No such question is presented by the record before us, but all the races and race meetings complained of were held, proposed, and threatened to be held at the Roby race track in Lake county, Indiana. We will not go outside of the record to decide that question. It is further contended that the information is not good, because a proper construction of section 2, as appellees' counsel say, shows that it applies to persons and corporations, and prohibits any one of them from holding a meeting for a longer period than fifteen days, or oftener than prohibited, but another individual or corporation may hold a meeting succeeding a previous meeting held by some other person or corporation on the same track without the intervention of thirty days, and not amenable to the statute." The first clause of the section ending with the period is so framed as to make this construction very plausible, though it would tend to defeat the whole scope and object of the act, as gathered from the current history of the times, the evils that gave rise to the enactment, the evident purpose and intent of the Legislature as evinced in the language employed throughout the whole act, and in its several parts. But the language of the second clause following the period makes it plain enough that the construction contended for is not the correct one. It reads : "It shall be unlawful to hold any race meeting oftener than twice in any period of sixty days, and it shall be unlawful to hold any race meeting until after the full period of thirty days has elapsed after meeting has been held."

This language is broad enough to embrace all persons, corporations, companies and associations, and prohibits holding the meetings within the inhibited time, whether

held by the same persons, corporations, associations, companies, or different ones. Moreover, this construction makes the act a harmonious whole, and consistent with itself, while the other one makes the act inconsistent with itself, and incongruous. The former is the construction which the law requires us to place upon the section. Suth. Stat. Con., sections 339, 340, 341.

It follows from what we have said, that the circuit court erred in sustaining the demurrers to the information, and to each paragraph thereof. The judgment is reversed, the cause remanded with instructions to overrule said demurrers and for further proceedings not inconsistent with this opinion.

Filed June 22, 1895; petition for rehearing overruled September 27, 1895.